**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | |
|---|---|
| **In re:** ) | |
| ) | **Case No. 22-60004** |
| **DAVID MICHAEL MOBLEY** ) | |
| ) | **Chapter 11** |
| **Debtor.** ) | |
| ) | |

**DEBTOR'S DISCLOSURE STATEMENT FOR** AMENDED **PLAN OF**
**REORGANIZATION DATED** ~~JULY 31~~OCTOBER    **, 2023**

Stephen W. Sather
**BARRON & NEWBURGER, P.C.**
7320 N. MoPac Expwy., Suite 400
Austin, Texas 78731
(512) 476-9103
(512) 476-9253 (Facsimile)

ATTORNEYS FOR DEBTOR-IN-POSSESSION

## TABLE OF CONTENTS

**ARTICLE I - SUPPORTING DISCLOSURE - GENERAL** ................................................. 1

**ARTICLE II - REPRESENTATIONS** ................................................. 7

**ARTICLE III – OVERVIEW OF THE DEBTOR** ................................................. 8
3.01    **Overview of the Debtor** ................................................. 8
3.02    **Management of the Debtor** ................................................. 8
3.03    **Proposed Operations After Bankruptcy** ................................................. 8

**ARTICLE IV – HISTORICAL INFORMATION CONCERNING THE DEBTOR** ........... 8
4.01    **Significant Transactions Prior to Bankruptcy** ................................................. 8
4.02    **Bankruptcy.** ................................................. 9

**ARTICLE V – FINANCIAL RESULTS** ................................................. 9
5.01    **Financial Results Prior to Bankruptcy** ................................................. 9
5.02    **Financial Results During Bankruptcy** ................................................. 10<del>9</del>
5.03    **Projected Financials After Bankruptcy** ................................................. 10

**ARTICLE VI - ANALYSIS AND VALUATION OF PROPERTY** ................................. 10
6.01    **Real Property.** ................................................. 10
6.02    **Personal Property** ................................................. 10
6.03    **Liquidation Value of Assets** ................................................. 11<del>10</del>

**ARTICLE VII - SUMMARY OF PLAN** ................................................. 12<del>11</del>
7.01    **Classification and Treatment of Classes Under the Plan** ................................................. 12<del>11</del>
7.02    **Means for Implementation of Plan** ................................................. 14
7.03    **Treatment of Executory Contracts and Unexpired Leases** ............ **Error! Bookmark not defined.**14
7.04    **Provisions for the Retention, Enforcement, Settlement, or Adjustment of Claims Belonging to the Debtor and the Estate Including Preferences and Conveyances** ..... **Error! Bookmark not defined.**15
7.05    **Effect of Confirmation** ................................................. 18<del>15</del>
7.06    **Modification of Plan** ................................................. 19<del>16</del>
7.07    **Post-Confirmation Procedure** ................................................. 19<del>16</del>
7.08    **Default and Other Related Provisions** ................................................. 19<del>16</del>

**ARTICLE VIII - FEASIBILITY OF THE PLAN AND RISK TO CREDITORS** ........... 20<del>17</del>

**ARTICLE IX - ALTERNATIVES TO DEBTOR' PLAN** ................................................. 20<del>17</del>
9.01    **Conversion** ................................................. 20<del>17</del>
9.02    **Dismissal** ................................................. 20<del>17</del>

**ARTICLE X - RELATIONSHIP OF DEBTOR WITH AFFILIATES** ................................. 20<del>17</del>
10.01   **In General.** ................................................. 20<del>17</del>
10.02   **Corporate Structure** ................................................. **Error! Bookmark not defined.**18

**ARTICLE XI - TAX CONSEQUENCES** ................................................. 21<del>18</del>

**ARTICLE XII- PENDING AND POTENTIAL LITIGATION** ................................. 21<del>18</del>
12.01   **Pending Litigation** ................................................. 21<del>18</del>
12.02   **Anticipated Litigation** ................................................. 21<del>18</del>

**ARTICLE XIII - SOLICITATION OF VOTES** ................................................. 21<del>18</del>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | |
|---|---|
| **In re:** | ) |
| | ) |
| **DAVID MICHAEL MOBLEY** | )   **Case No. 22-60004** |
| | ) |
| **Debtor.** | )   **Chapter 11** |
| | ) |
| | ) |

**DEBTOR'S DISCLOSURE STATEMENT FOR AMENDED PLAN OF**
**REORGANIZATION DATED ~~JULY 31~~OCTOBER    , 2023**

  **David Michael Mobley** ("Debtor") propose the following Disclosure Statement for Amended Plan Dated ~~July~~October    , 2023, pursuant to chapter 11 of title 11, United States Code ("Bankruptcy Code" or "Code").

**ARTICLE I**
**GENERAL**

*Identity of the Debtor*

  1.01 David Michael Mobley is the Debtor.  He is an individual who resides in Wharton County, Texas and provides support to oil and gas companies by buying and selling equipment and through his company Texas Quality Mats, LLC.

*Purpose of This Disclosure; Source of Information*

  1.02 Debtor submits this disclosure pursuant to 11 U.S.C. § 1125 to all known claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Debtor's creditors in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan.  This Disclosure Statement describes the operations of the Debtor prior to Confirmation.  Any accounting information contained herein has been provided by the Debtor and has been prepared using the cash method of accounting.

*Explanation of chapter 11*

  1.03 Chapter 11 is the principal reorganization chapter of the Code.  Pursuant to chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditor and equity interest holders.  ("Reorganization of its business," as in this Case, may include the cessation of business activities and liquidation of assets to be used to repay creditors.)  Formation of a plan of reorganization is the principal purpose of a chapter 11 reorganization case.  A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor.  After a plan of reorganization has been filed, it must be accepted by holder of claims against, or interests

in, the debtor.  Section 1125 of the Bankruptcy Code requires full disclosure before solicitation of acceptances of a plan of reorganization.  This disclosure is presented to Claimants to satisfy the requirements of 11 U.S.C. § 1125.

*Explanation of the Process of Confirmation*

1.04    Even if all classes of claims accept the Plan, its confirmation may be refused by the Court.  Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of claimants.  It generally requires that the value to be distributed to Claimants and Equity Interest Holders may not be less than such parties would receive if the debtor were liquidated under chapter 7 of the Code.

1.05    Acceptance of the Plan by Claimants and Equity Interest Holders is important.  In order for the Plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims actually voting on the plan in such class must vote for the plan and the Equity Interest Holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan.  Chapter 11 of the Bankruptcy Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.  The Plan, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

1.06    The Court may confirm the Plan even though less than all of the classes of claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in 11 U.S.C. § 1129(b).

1.07    Confirmation of the Plan discharges a debtor from all of its pre-confirmation Debtor and liabilities except as expressly provided for in the plan and 11 U.S.C. § 1141(d).  Confirmation makes the plan binding upon the debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

*Voting Procedures*

1.08    **Unimpaired Classes**.  Claimants in Classes 1, 2, 10 and 12 are not impaired under the plan.  Such Classes are not required to vote upon the Plan if they agree that they are not impaired.  However, they may vote upon the Plan if they want to.

1.09    **Impaired Classes**.  Classes 3-9 and 11 are impaired as defined by 11 U.S.C. § 1124 and Debtor is seeking acceptance of the Plan by these classes.  Each holder of an Allowed Claim in Classes 3-9 and 11 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.  One ballot will be sent to each Claimant eligible to vote on the plan.  For all classes, the ballot must be returned to Debtor's attorneys as follows:

2

Barron & Newburger, P.C
Attention:      Mobley Ballots
7320 N. MoPac Expwy., Suite 400
Austin, Texas 78731

In order to be counted, ballots must be RECEIVED no later than at the time and on the date stated on the ballot.  Ballots may be submitted by telecopier to (512) 476-9253 or by email to ssather@bn-lawyers.com.  The Debtor may elect to waive any defect of form with regard to any ballot and may accept a ballot which is not made in the proper form.

1.10    **Acceptance**.  Ballots that are signed and returned but fail to indicate either an acceptance or rejection will not be counted.

**Best Interests of Creditors Test**

1.11    Section 1129(a)(7) of the Bankruptcy Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  If 11 U.S.C. § 1111(b)(2) applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan on account of such claim property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.  In order for the Plan to be confirmed, the Court must determine that the Plan is in the best interests of the Debtor's creditors.  Accordingly, the proposed plan must provide the Debtor' creditors with more than they would receive in a chapter 7 liquidation.  Accordingly, since the Plan proposes to pay all Secured Creditors in full and the General Unsecured creditors with more than they would receive in a chapter 7 liquidation for the reasons discussed below, Debtor believe that the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(7).

**Cramdown**

1.12    The Court may confirm the Plan even though less than all of the classes of claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests, or "cramdown", are set forth in 11 U.S.C. § 1129(b).  Should cramdown become an issue at confirmation in this Case, Debtor request that the Court determine and enter findings necessary for same—*to wit,* that the Plan does not "discriminate unfairly" and is fair and equitable with respect to any objecting creditor.

1.13    "Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims.  As set forth in 11 U.S.C. § 1129(b)(2), those meanings are as follows:

1.13.01    **Secured Claims.**  With respect to a class of secured claims, the Plan provides:

(a)(i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent to of the allowed amount of such claims; and

(ii)   that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in the estate's interest in such property,

(b)   for the sale, subject to 11 U.S.C. § 363(k), of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

(c)   The realization by such holders of the "indubitable equivalent" of such claims.

1.13.02   **Unsecured Claims.**  With respect to a class of unsecured claims, the Plan provides:

(a)   that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the Effective Date of the Plan, equal to the allowed amount of such claim; or

(b)   the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest in any property.

1.13.03   **Interests.**  With respect to a class of interests, the Plan provides:

(a)   that each holder of an interest of such class receives or retains on account of such interest property of a value, as of the Effective Date of the Plan, equal to the greater of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(b)   that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

1.14   In the event that one or more classes of impaired claims or Equity Interests reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims.  The Debtor believe that its unsecured creditors will vote for the Plan.  The absolute priority rule requires that prior to equity retaining an interest in the Debtor, senior classes of claims must be paid in full or vote to accept the Plan.  This means that when the unsecured creditors are not being paid in full, Debtor' shareholders or equity interest holders cannot retain their stock in the Debtor or receive any financial benefit under the Plan because such retention or

4

receipt violates the absolute priority rule and may make the Plan non-confirmable by the Court.

***Definition of Impairment***

  1.15 "Impaired" as it refers to a class of claims or equity interests" is defined in 11 U.S.C. § 1124, which sets forth the elements for determining whether a claim or equity interest is impaired under a plan of reorganization.

***Classification and Treatment of Claims and Interests***

  1.16 The Plan classifies Claims separately in accordance with the Bankruptcy Code and provides different treatment for different classes of claims.

  1.17 Only holders of Allowed Claims are entitled to receive distributions under the Plan. "Allowed Claim" is defined in Section 1.01.03 of the Amended Plan.

  1.18 In accordance with the Plan, unless otherwise provided in the Plan or the Confirmation Order, the treatment of any claim under the Plan will be in full satisfaction, settlement, release, and discharge of and in for each and every claim.

***Requirements for Confirmation of the Plan***

  1.19 At the confirmation hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event it will enter an order confirming the Plan. As set forth in 11 U.S.C, § 1129, these requirements are as follows:

    1.19.01  The Plan complies with the applicable provisions of the Bankruptcy Code.

    1.19.02  The proponent of the Plan complies with the applicable provisions of the Bankruptcy Code.

    1.19.03  The Plan has been proposed in good faith and not by any means forbidden by law.

    1.19.04  Any payment made or promised by the Debtor, by the plan proponents, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Case, or in connection with the Plan and incident to the Case, has been approved by, or is subject to approval of the Bankruptcy Court as reasonable.

    1.19.05  The proponent of the Plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor under the plan. Additionally, the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

       1.19.06      The proponent of the Plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.

       1.19.07      Any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtor has approved any rate change provide for in the Plan, or such rate change is expressly conditioned on such approval.

       1.19.08      With respect to each class of claims or interests, (a) such class has accepted the plan; or (b) such class is not impaired under the Plan.

       1.19.09      With respect to each impaired class of claims of interests, each holder of a claim or interest of such class has (a) accepted the Plan; or (b) will receive or retain under the Plan on account of such claim or interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code on such date; or (c) if 11 U.S.C. § 1111(b)(2) applies to the claims of such class, the holder of a claim of such class will receive or retain under the Plan on account of such claim property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interests in the estate's interest in the property that secures such claims.

       1.19.10      Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that with respect to a claim of a kind specified in 11 U.S.C. § 507(a)(2) or 507(a)(3), on the Effective Date of the Plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim.

       1.19.11.      Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that with respect to a claim of a kind specified in 11 U.S.C. §§ 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) on the Effective Date of the Plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim; and

       1.19.12.      Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that with respect to a claim of a kind specified in 11 U.S.C. § 507(a)(8), the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding five (5) years after the date of assessment of such claim, of a value, as of the Effective Date of the Plan, equal to the allowed amount of such claim.

       1.19.13      If a class of claims is impaired under the Plan, at least one class of Claims that is impaired has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a claim of such class.

       1.19.14      Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

1.19.15        All fees payable under 20 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payments of all such fees on the effective date of the plan.

1.19.16        The Plan provides for the continuation after its Effective Date of payment of all retiree benefits, as that term is defined in 11 U.S.C. § 1114, at the level established pursuant to 11 U.S.C. § 1114(e)(1)(B) or (g), at any time prior to confirmation for the Plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

1.19.17        All transfers of property of the Plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

1.19.18        Debtor believe that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that the Debtor have complied with or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith.

1.20     At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of allowed claims or allowed equity interests would receive greater distributions under the Plan than they would receive in a liquidation under chapter 7.

## ARTICLE II
### REPRESENTATIONS

2.01     These Disclosures are provided pursuant to 11 U.S.C. § 1125 to the Debtor' known Creditors and other parties-in-interest in connection with solicitation of acceptance of the Plan, as amended or modified.  The purpose of these Disclosures are to provide information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan.

2.02     The information contained in these Disclosures has been derived from information submitted by the Debtor, unless specifically stated to be from other sources.

2.03     No representations concerning the Debtor are authorized by the Debtor other than those set forth in these Disclosures.  The Debtor recommend that any representation or inducement made to secure your acceptance or rejection of the Plan which is not contained in this Disclosure should not be relied upon by you in reaching your decision on how to vote on the Plan.  Any representation or inducement made to you not contained herein should be reported to the attorneys for Debtor who shall deliver such information to the Court for such action as may be appropriate.

2.04     ANY BENEFITS OFFERED TO CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES.  IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERMENTAL AUTHORITY HAS PASSED UPON THE

ACCURACY OR ADEQUACY OF THESE DISCLOSURES OR UPON THE MERITS OF THE PLAN.   ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

2.05    THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  FOR THIS REASON AND BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE STATEMENTS CONTAINED IN THIS DISCLOSURE ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

2.06    THE APPROVAL BY THE COURT OF THESE DISCLOSURES DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

2.07    DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY TO ULTIMATELY RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS.  CONSEQUENTLY, DEBTOR URGES THAT CLAIMANTS ACCEPT THE PLAN AND CASE THEIR VOTES FOR THE PLAN.

## ARTICLE III
### OVERVIEW OF THE DEBTOR

**3**.01    **Overview of the Debtor.**  The Debtor is an individual.

3.02    **Management of the Debtor.**    As an individual, the Debtor manages his own personal finances.  The Debtor owns and operates Texas Quality Mats, LLC.

3.03    **Proposed Operations After Bankruptcy.**  The Debtor will continue to work for Texas Quality Mats, LLC.

## ARTICLE IV
### HISTORICAL INFORMATION CONCERNING THE DEBTOR

4.01    **Significant Transactions Prior to Bankruptcy**

David Michael Mobley is an entrepreneur in the oil and gas business. He was previously married to Yvette Mobley. On December 31, 2012, the Debtor and Yvette Mobley agreed to a sale of two oil and gas service companies. The Debtor and Yvette Mobley, acting through QLS Holdco, Inc. (Holdco), sold Quality Lease Service, LLC (QLS) and Quality Lease Rental Service, LLC (QLRS) to the newly created Quality Lease and Rental Holdings, LLC (QLRH).

8

Disputes arose after the sale and QLRH filed a petition under Chapter 11 of the Bankruptcy Code on October 1, 2014. The Mobleys brought an adversary proceeding against QLRH and others. The QLRH-related parties brought a counterclaim. The matter was removed to U.S. District Court where it was given Case No. 16-0006. QLRH confirmed a plan where the claims between the Quality and the Mobley parties were preserved.  After years of protracted litigation, the claims between the Quality parties and the Mobley parties was set for trial on January 24, 2022, in U.S. District Court for the Southern District of Texas, Corpus Christ Division, before the Hon. Judge David Morales.

4.02   **Bankruptcy.**  The Debtor filed bankruptcy on January 21, 2022. He filed his case under Subchapter V of the Bankruptcy Code. The Quality Parties filed an objection to the Subchapter V designation. On June 1, 2022, the Court entered an Order denying the Subchapter V designation.

The Quality Parties filed an objection to the Debtor's homestead exemption. They also filed Adv.No. 22-6024, seeking a determination that their claims were nondischargeable. The Quality Parties also filed a Motion to convert the case to chapter 7.

The Debtor filed a motion to dismiss the Chapter 11 case.

On December 1, 2022, the parties conducted a mediation with the Hon. Eduardo Rodriguez. The mediation resulted in a Mediation Term Sheet, a copy of which is attached as Exhibit A. The parties filed a joint motion to compromise and settle which was approved by the Court on January 6, 2023. Pursuant to the compromise and settlement, Drew McManigle was appointed as Examiner for the purpose of reviewing claims which the estate might have against third parties. Mr. McManigle filed his report on May 30, 2023, a copy of which is attached as Exhibit B.  This plan is filed to implement the terms of the Mediation Termsheet.

## ARTICLE V
### FINANCIAL RESULTS

5.01   **Financial Results Prior to Bankruptcy.**   The following is a summary of the Debtor' federal income tax returns for years 2020 and 2021 as well as those of Texas Quality Mats and Mobley Investments:

Personal Returns:

| Category | 2020 | 2021 |
|---|---|---|
| Wages | $346,538 | $251,154 |
| Capital Gain or Loss | -$3,000 | $603,921 |
| Other Income | -$2,914,334 | -$809,785 |
| Net Income | -$2,570,796 | $41,200 |
| Deductions | $24,800 | $25,100 |
| Taxable Income | $0 | $16,110 |
| Tax Owed | $0 | 10,729 |

9

| Estimated           Tax Payments |  | $48,037 |
|---|---|---|
| Refund |  | $37,308 |

Texas Quality Mats:

| Category | 2018 | 2019 | 2020 |
|---|---|---|---|
| Total Income | $2,783,530 | $4,038,564 | $3,152,572 |
| Deductions | $2,472,433 | $3,715,466 | $3,650,465 |
| Taxable Income | $311,097 | $323,098 | -$497,893 |

Mobley Investments:

| Category | 2018 | 2019 | 2020 |
|---|---|---|---|
| Total Income | $3,111 | $3,231 | -108,729 |
| Deductions |  |  |  |
| Taxable Income | $3,111 | $3,231 | -108,729 |

    5.02   **Financial Results During Bankruptcy.**   According to the Monthly Operating Report for Period Ending June 30, 2023, the Debtor has accumulated cash of $101,244 in his Debtor in Possession operating account.

    ~~5.03   **Projected Financials After Bankruptcy.**~~

## ARTICLE VI
### ANALYSIS AND VALUATION OF PROPERTY

    **6.**01   **Real Property.**   The Debtor owns the following real property.

| Property | Scheduled Value | Liens | Exempt? |
|---|---|---|---|
| 480 CR 335, El Campo, TX | $800,000.00 | $71,764.37 Wharton County $3,896,018.00 (IRS) |  |
| 3815 Montgomery Rd., Richmond, TX 77406 | $2,800,000.00 | $2,199,111.38 (First Financial) $1,471.00 Ft. Bend County Tax Assessor | Claimed as exempt; objection to be withdrawn under Plan |

    6.02   **Personal Property**  The Debtor own the following personal property:

10

| Asset | Value | Liens | Exempt? |
|---|---|---|---|
| Ford F150 | $32,500.00 | | |
| Harley-Davidson Thunder Mountain | $500.00 | | |
| Harley-Davidson Thunder Mountain | $500.00 | | |
| Honda Goldwing | $12,000.00 | | |
| 2018 Dodge Charger | $500.00 | Santander | |
| Solitaire HD-384 | $15,000.00 | IRS—see above | |
| Clayton Homes | $8,000.00 | IRS—see above | |
| McClain Trailer | $2,000.00 | | |
| ½ Int. Cobalt Boat | $17,500.00 | | |
| Household Goods | $2,770.00 | | Yes |
| Electronics | $600.00 | | Yes |
| Hand and power tools | $200.00 | | Yes |
| Clothing | $100.00 | | Yes |
| Cash | $500.00 | | |
| Bank accounts | $101,244.00 | | |
| 99% Texas Quality Mats | $0 | | |
| 50% Mobley Investments | $2,156.71 | | |
| 50% Fleetwood Revolution Motor Home | $32,000.00 | | Yes |
| 2018 Ford 350 | $45,000.00 | | Yes |
| 2017 Kawasaki LXT Mule ATV | $5,000.00 | | Yes |
| | | | |
| | | | |

6.03 **Liquidation Value of Assets.** In a chapter 7 liquidation, a trustee would be appointed to liquidate the assets of the Debtor. In this case, the assets of the estate will consist of cash once the court determines the amount to be paid to the Debtor.

A chapter 7 trustee would pay creditors in order of priority, with secured claims, chapter 7 administrative expense claims and chapter 11 administrative expense claims being paid first. Net remaining funds would be paid to unsecured creditors on a pro rata basis. Most of Debtor' property is either exempt or encumbered by liens. Debtor estimates that the liquidation value of his non-exempt property would be no more than $153,969.47. Before unsecured creditors could receive any dividend, Chapter 7 administrative expenses, Chapter 11 administrative expenses and priority claims would have to be paid. After deducting these expenses, unsecured creditors would expect to receive $126,626.00 in a liquidation. Debtor's liquidation analysis is attached as Exhibit A.

The liquidation analysis is prepared by Debtor' counsel based upon review of the documents in this case with input from Debtor' management. This analysis is the Debtor' best estimate of what would occur in a chapter 7 liquidation. It is the Debtor' contention of what would

11

be most likely to occur in a chapter 7 liquidation.  Since it is a prediction of unknown future events, it should be taken as an opinion subject to many complex variables.

**ARTICLE VII**
**SUMMARY OF PLAN**

    7.01    **Classification and Treatment of Classes Under the Plan**

**Class 1—Administrative Expense Claims**

    Administrative Expense Claims consist of expenses incurred during the chapter 11 proceeding prior to confirmation which are approved by the Court and expenses incurred in operating the Debtor' business.  The estimated future UST fees are also included in this class although payment is not required until the fees are due. Most administrative expense claims consist of claims by professionals employed by the Bankruptcy Estate.  The Debtor are aware of the following Class 1 Administrative Claims:

    No Administrative Expense Claims for professional fees shall be allowed except pursuant to Court order.  The following professionals have been employed pursuant to Court Order:

| | |
|---|---|
| Jerome Brown | Bankruptcy Counsel |
| Barron & Newburger, P.C. | Bankruptcy Co-Counsel |

    Unless otherwise agreed, each holder of a Class 1 claim shall be paid in full on the later of the Effective Date or on the date that a final order is entered approving or allowing the Administrative Expense Claim or the claim for professional fees or as due under applicable law.

    Class 1 is not impaired.

**Class 2—Priority Claims**

    Class 2 consists of Claims entitled to Priority under 11 U.S.C. § 507(a).

    The Class 2 claim, if any, shall be paid on the Effective Date is such claim is allowed in the amount of $5,000 or less. If the claim is allowed at an amount in excess of $5,000, it shall be payable in sixty (60) equal monthly installments including interest at the rate of 4% per annum.

    Class 2 is not impaired.

    4.03    **Class 3—Secured Claims of Wharton County and Matagorda ISD**

    Class 3 shall consist of the Secured Claims of Wharton County and Matagorda ISD. Wharton County has filed a claim in the amount of $84,453.73. Matagorda ISD has filed a claim in the amount of $4,989.33.

12

The Class 3 Creditor shall retain its lien upon the Debtor's property. Class 3 shall be entitled to interest from the petition date to the confirmation date at the rate of 1% per month.

The Debtor shall pay Class 3 in sixty (60) equal monthly installments including interest at the rate of 1% per month.

Class 3 is impaired.

**Class 4—Secured Claim of First Financial Bank**

Class 4 consists of the Secured Claim of First Financial Bank. First Financial Bank has filed a secured claim in the amount of $2,199,111.38.

First Financial Bank shall retain its lien under the Plan.

Debtor shall continue to make the regular contractual payments to First Financial Bank in the amount of $16,298.54.  Interest shall continue to accrue at the contractual rate.

Class 4 is impaired.

**Class 5—Secured Claims of Ford Motor Credit**

Class 5 consists of the Secured Claims of Ford Motor Credit. Ford has filed the following claims:

2-1     $17,300.84
4-1     $33,301.20

The following claims remain outstanding:

| Code | Account No. | Vehicle | VIN | Payment amt | Next pmt due | Remaining pmts | 10-day payoff |
|------|-------------|---------|-----|-------------|--------------|----------------|---------------|
| MOBLEY3 | XXXX3685 | 2021 Ford F350 | 1FT8W3BT9MEC88037 | $1,991.85 | 10/30/23 | 18 | $34,157.94 |
| MOBLEY4 | XXXX7371 | 2019 Ford F350 | 1FT8W3BT3KEG71033 | $2,035.34 | 10/23/23 | 4 | $9,530.56 |

Class 5 shall retain its liens under the Plan.

Debtor and/or Texas Quality Mats, LLC shall continue to make the regular monthly payments on the vehicles financed by Ford Motor Credit as provided by the Agreed Order

13

Conditioning Automatic Stay as to Four (4) Ford Vehicles (Dkt. #94). : Debtor and/or Texas Quality Mats, LLC shall continue to make the regular monthly payments on the vehicles financed by Ford Motor Credit in accordance with the terms of the respective Texas Motor Vehicle Retail Installment Sales Contracts, the default provisions of which shall control notwithstanding any provision to the contrary contained in the Agreed Order Conditioning Automatic Stay as to Four (4) Ford Vehicles (Dkt. #94) or this Plan.

4.05.04    Class 5 is impaired.

**Class 6—Secured Claim of Internal Revenue Service.**

**C**lass 6 shall consist of the Secured Claim of the Internal Revenue Service. The IRS has filed a claim in the amount of $3,820,119.08. Of this claim, $787,351.25 is claimed as secured.

The Internal Revenue Service shall retain its liens under the Plan.

The Internal Revenue Service shall receive payment of its claim in sixty (60) equal monthly installments including the statutory rate of interest in effect on the Confirmation Date.

Class 6 is impaired.

**Class 7—Secured Claim of People's United Equipment Finance Corp.**

**C**lass 7 shall consist of the Secured Claim of People's United Equipment Finance Corp. People's United filed a claim in the amount of $571,857.75.

People's United Equipment Finance Corp. shall not retain its liens under the Plan.

The Class 7 creditor has been paid in full and will not receive any further payments. Its liens shall be deemed satisfied.

Class 7 is impaired.

**Class 8—Secured Claim of Santander Consumer USA.**

**C**lass 8 shall consist of the Secured Claim of Santander Consumer USA. Santander filed a claim in the amount of $24,567.49.

Santander Consumer USA shall retain its liens under the Plan to the extent of the value of its collateral. Unless the Court rules otherwise, the value of the collateral shall be fixed at $500.00. The remaining claim of Santander shall be an unsecured claim.

The Debtor shall pay Santander $500.00 on the Effective Date in full satisfaction of its secured claim (but not its unsecured claim).

14

Class 8 is impaired.

**Class 9—Unsecured Claims of Less than $75,000.00**

Class 9 shall consist of Allowed Unsecured Claims of less than $75,000.00. The Debtor believes that the following claims fall within this class:

| AT&T Corp. | $ | 986.00 | | | |
|---|---|---|---|---|---|
| Bank of America | $ | 12,289.00 | $ | 12,036.35 | 33 |
| First State Bank Louise | $ | 63,794.58 | | | |
| Independent Banksbank | | | $ | 60,258.25 | 12 to 32 |
| Santander Consumer USA | | | $ | 24,067.49 | |

The Class 9 claims shall receive a single payment of 10% of the amount of their Allowed Claims on the Effective Date or the date that a claim becomes an Allowed Claim, whichever is later.

Any Class 9 creditor may elect to be treated under Class 11. Any Class 9 creditors which votes to reject the plan shall be deemed to have elected Class 11 treatment.

Class 9 is impaired.

**Class 10—Guaranty Claims**

Class 10 shall consist of unsecured claims where the Debtor is a guarantor of the obligation of a third party where such principal obligor remains in business and continues to pay such claims. This class includes the claim of Ford Motor Company for $109,945.94.  This class does not include Texas Champion Bank.

Claims falling within Class 10 shall be paid by their principal obligor. The Debtor's guaranty shall remain in force and may be enforced by the creditor in the event of a default by the principal obligor.  These claims shall be paid in full.

Class 10 is unimpaired.

**Class 11--Unsecured Claims of More Than $75,000**

Class 11 shall consist of Allowed Unsecured Claims of more than $75,000 which are not Guaranty Claims.  Pursuant to the Settlement Agreement, the Quality Companies shall hold a Class 11 Unsecured Claim in the amount of $40,000,000.

The claims in this class include:

15

| Internal Revenue Service | | $ 3,032,767.83 | 37 |
|---|---|---|---|
| M/G Finance Co., Ltd. | $ 968,407.76 | $ 1,642,924.92 | 5 |
| Quality Lease and Rental Holdings, LLC | Unknown | $ 62,700,000.00 | 10 |
| Texas Champion Bank | $5,525,573.65 | $ 5,140,698.51 | 35 |

The Class 11 Unsecured Creditors shall receive three forms of payment: Classes 1-10, and Class 12 shall not be entitled to any of these funds, and they shall be paid from other funds available to the Debtor.

(a) Any amounts recovered by the Litigation Trustee net of expenses incurred by the Litigation Trustee shall be distributed pro rata to the Class 11 Creditors.

(b) The Debtor shall pay $5,000.00 per month for 60 months beginning on the Effective Date.

(c) The sum of $1,600,000.00 shall be paid by the Debtor and/or Texas Quality Mats, LLC according to the following schedule:
    (i) $5,000.00 per month for the first twenty-four months after the Effective Date;
    (ii) $10,000.00 per month for the next twelve months;
    (iii) $15,000.00 per month for the next twelve months;
    (iv) $20,000.00 per month for the next twelve months; and
    (v) A balloon payment of $940,000.00 shall be due sixty (60) months after the Effective Date.

The Litigation Trust Agreement shall be substantially in the form of the attached Exhibit C.

The Debtor shall grant the Litigation Trustee a lien on the Yard Property in the amount of $1,000,000.00 to secure the payment of $1,600,000 in paragraph of the Plan 4.11.02(c). The form of the Yard Deed of Trust is attached as Exhibit D.

Texas Quality Mats, LLC shall be jointly and severally liable with the Debtor for the timely payment of Class 11 Unsecured Creditors.

The Debtor shall be authorized to convey the Yard Property to Texas Quality Mats, LLC upon final payment to the Class 11 creditors.

Class 11 is impaired.

**Class 12—Equity Interests**

4.12.01    Class 12 consists of the Equity Interest of the Debtor.

4.12.02    The Debtor shall retain his interests in property. Within thirty (30) days after

16

entry of the Confirmation Order, the Quality Companies shall withdraw their objection to the Debtor's homestead exemption.

      4.12.03      Class 12 is unimpaired.

7.02    Means for Implementing Plan

    **Disbursing Agent.** The Reorganized Debtor shall be the disbursing agent for the Plan for all Allowed Claims other than Class 11. The Litigation Trustee shall be the disbursing agent for the Class 11 claims.

    **Management of the Reorganized Debtor.** The Debtor shall continue to manage his business affairs.

    **Payment of Fees and Expenses.** The Reorganized Debtor may pay reasonable attorney's fees and out of pocket expenses incurred in the implementation of this Plan.

7.03 Treatment of Executory Contracts and Unexpired Leases

    **Assumption.** Unless ordered otherwise by the Court, no executory contracts or unexpired leases shall be assumed.

    **Rejection.** Unless ordered otherwise by the Court, all executory contracts and unexpired leases shall be rejected. The Debtor believes that any executory contracts in existence on the Petition Date have been terminated.

7.04    Provisions for the Retention, Enforcement, Settlement, or Adjustment of Claims Belonging to the Debtor and the Estate Including Preferences and Conveyances As Well As Litigation with Quality Lease and Rental Holdings, LLC, et al

    **The Litigation Trustee.**

    (a) The Litigation Trustee shall be an estate representative pursuant to 11 U.S.C. §1123(b)(3)(B). The Litigation Trustee shall be vested with the full power and authority to pursue, compromise or release the Preserved Claims.

    (b) The Litigation Trustee shall be entitled to compensation on an hourly basis as well as reimbursement of expenses. Such compensation and expenses shall be paid out of the funds recovered by the Litigation Trustee.

    (c) The Litigation Trustee shall be entitled to retain counsel and other professionals to represent him.

(d) The Litigation Trustee shall be entitled to payment of compensation and reimbursement of expenses and shall be entitled to compensate any professional retained by the Trustee by filing a Notice of Intent to Pay Professional Fees with the Court and serving such Notice upon the Class 11 creditors. If no party shall object within fourteen (14) days, the Trustee shall be entitled to make the proposed payment. If a party in interest shall object, the Trustee shall be entitled to make such payment to the extent authorized by the Court following notice and a hearing.

(d)(e)  The initial Litigation Trustee shall be Jourdain Poupore. In the event that Mr. Poupore shall resign or become unable to fulfill this obligations, the Debtor and/or the Quality Companies shall apply to the Court for appointment of a substitute Litigation Trustee

**The Released Claims.**   Entry of the Confirmation Order shall release any and all claims and causes of action which the Debtor or the Estate may hold against Texas Quality Mats, LLC, Lisa Mobley, Allan Martin and/or The Quality Companies; provided that such release shall not affect the obligations of Texas Quality Mats, LLC under this Plan.

**The Preserved Claims.**   All other claims and causes of action belonging to the Debtor other than the Released Claims shall be preserved and shall be assigned to the Litigation Trustee. For purposes of clarity, the Preserved Claims shall include all potential claims related to the matters set forth the claims and causes of action described in the Examiner's Report of Drew McManigle dated May 30, 2023 are preserved. (see attached Exhibit A).

**The Quality Companies Adversary Proceeding.**   The parties shall enter into an Agreed Judgment in Adv. No. 22-6024 awarding the Plaintiffs a non-dischargeable judgment against the Debtor in the amount of $2,250,000. Any amounts received by the Plaintiffs as creditors under this Plan shall be credited against the non-dischargeable judgment. The Plaintiffs shall forebear from exercising any collection remedies for a period of six years after entry of the Confirmation Order. The Agreed Judgment shall not be interest during the six year forbearance period. At the conclusion of the six year forbearance period, the Agreed Judgment shall begin to accrue interest at the then-applicable federal judgment rate.

**The Settlement Agreement.** All of the terms of the Settlement Agreement shall be deemed to be incorporated into the Plan and binding upon the Parties to the Settlement Agreement regardless of whether they are expressly stated int this Plan.

reasonable attorney's fees and out of pocket expenses incurred in the implementation of this Plan.

7.05    **Effect of Confirmation**

**Discharge.**   The Debtor shall receive a discharge from all debts which are the subject of the Plan upon the conclusion of payments under the Plan.

18

**Status of Property of the Estate After Confirmation.** Confirmation of the Plan shall vest the Property of the Estate in the Debtor free and clear of all claims and liens except as expressly provided in the Plan; provided that if the Plan is not substantially consummated, the property of the Estate shall revest in the Estate upon conversion to chapter 7 or entry of an order revoking confirmation of the Plan.

**Binding Nature of Plan.** Pursuant to 11 U.S.C. § 1141, the provisions of the confirmed Plan shall bind the Debtor and its Creditors and the holders of its Equity Securities existing as of the Effective Date, whether or not the Claim or Equity Interest is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted the Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

7.06 **Modification of Plan**

**Modification to the Plan.** In accordance with 11 U.S.C. § 1127 and Fed R. Bankr. P. 3019, to the extent applicable, Debtor may modify or amend the Plan prior to the Confirmation Date, provided that notice and an opportunity for hearing are given to any affected party and the Court finds that the proposed modification or correction does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted the modification in writing. Debtor may modify the Plan after Confirmation and before substantial consummation as long as the modification complies with the requirements of 11 U.S.C. §§ 1122 and 1123 and the Plan as modified will become the Plan if, after notice and hearing, the Court finds that circumstances warrant such modification and confirms the Plan as modified.

7.07 **Post-Confirmation Procedure**

**Application for Final Decree.** The Debtor shall file an application for final decree as soon as is practicable but not later than one hundred and twenty (120) days after the Effective Date. If the Plan cannot be substantially consummated as that term is defined in 11 U.S.C. § 1101(2) during this time period or if there are still pending matters to be ruled upon by the Court, the Debtor shall seek an extension of such deadline from the Court. If the Debtor fail to file an Application for Final Decree prior to such deadline or fails to timely request an extension of the same, then the Court, on its own motion or at the request of any party in interest, including the United States Trustee, may enter an order closing the Debtor' case.

**U.S. Trustees Matters.**

**Fees.** The Debtor shall continue to pay U.S. Trustee fees until the case is closed.

**Reports.** The Debtor shall file post-confirmation reports in the form prescribed by the United States Trustee until the case is closed.

7.08 **Default and Other Related Provisions**

In the event of a default by the Debtor under the Plan (which explicitly includes the failure

19

to pay fees to the United States Trustee as they come due), creditors or affected parties may exercise any rights granted to them under documents executed to evidence the Plan or any rights available to creditors under applicable bankruptcy and/or non-bankruptcy law.  In the absence of documents executed to evidence the Plan, this Plan may be enforced as a contract. Notwithstanding any other provision, any creditor alleging a default shall give the Debtor fifteen (15) days notice and an opportunity to cure before exercising any rights available upon default; no creditor shall be required to give more than three notices of default during the term of this Plan. This provision shall not apply to creditors designated as unimpaired.

## ARTICLE VIII
### FEASIBILITY OF THE PLAN AND RISK TO CREDITORS

Feasibility of the Plan and Risk to Creditors measures the likelihood that creditors will receive the payments promised to them.  This Plan depends on the Debtor' ability to earn enough money to make the payments to creditors.  This primarily depends on the ability of Texas Quality Mats, LLC to earn sufficient amounts to make the payments. Because the business of Texas Quality Mats depends on the health of the oil and gas industry, a severe decline in the oil and gas industry could make it difficult to make the payments.

## ARTICLE IX
### ALTERNATIVES TO DEBTOR' PLAN

Debtor is aware of two alternatives to its Plan: (i) conversion to chapter 7 liquidation; and (ii) dismissal of the bankruptcy case.

9.01   **Conversion.**   Debtor do not believe that conversion to chapter 7 is in the best interest of creditors.  The Debtor' liquidation analysis indicates that not more than $126,646.00 would be available to creditors in a Chapter 7 liquidation. This would only pay a small percentage to unsecured creditors.

9.02   **Dismissal.**   Debtor also do not believe that dismissal of the Case is in the best interest of creditors.  In the event of a dismissal, there would not be a structured way to distribute the Debtor' funds to creditors.

## ARTICLE X
### RELATIONSHIP OF DEBTOR WITH AFFILIATES

10.01   **In General.**   Under the Bankruptcy Code, the term affiliate refers to an entity that directly or indirectly controls with power to vote twenty (20) percent or more of the securities of the Debtor, a corporation twenty (20) percent or more of whose outstanding voting securities are directly or indirectly controlled by the Debtor, a person whose business is operated under a lease or operating agreement by a Debtor or a person substantially all of whose property is operated under an operating agreement with the Debtor or an entity that operates the business or

substantially all of the property of the Debtor under a lease or operating agreement.  Texas Quality Mats, LLC is an affiliate of the Debtor.

## ARTICLE XI
### TAX CONSEQUENCES

**11**.01   Implementation of the Plan may result in federal income tax consequence to holders of Claims, to the Equity Interest Holder, and to the Debtor.  Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the claim of the Creditor or the interests of the Equity Interest Holder.  **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL LAW.**

## ARTICLE XII
### PENDING AND POTENTIAL LITIGATION

12.01   **Pending Litigation.**  The main pending litigation at the time of the bankruptcy case was the suit between the Quality Companies and the Debtor. This suit will be dismissed under the Plan. There is also the adversary proceeding brought by the Quality Companies which will be resolved under the Plan.

12.02   **Anticipated Litigation.**  The Litigation Trustee will be able to pursue any of the claims identified in the Examiner's Report attached as Exhibit A.

## ARTICLE XIII
### SOLICITATION OF VOTES

The Debtor has devoted substantial effort to preparation of its Plan of Reorganization.  The Debtor believes that the Plan represents a fair adjustment of his relationship with the creditors.  The Debtor believes that the Plan is superior to the alternatives.  Therefore, the Debtor requests that all parties approve the Plan of Reorganization.

Respectfully submitted,

/s/
David Michael Mobley

**BARRON & NEWBURGER, P.C.**
7320 N. MoPac Expwy., Suite 400
Austin, Texas 78731
(512) 476-9103 Ext. 220
(512) 476-9253 (Facsimile)

21

By:    /s/Stephen W. Sather
       Stephen W. Sather
       State Bar No. 17657520

ATTORNEYS FOR DEBTOR-IN-POSSESSION