United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 20, 2024
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | |
|---|---|
| **In re:** | **Case No. 22-60004** |
| **DAVID MICHAEL MOBLEY** | |
| **Debtor.** | **Chapter 11** |

CAME ON TO BE HEARD on the 20th day of March 2024 confirmation of Debtor's Amended Plan of Reorganization dated December 7, 2023. Santander Consumer USA, Inc. objected to the Plan ("Santander Objection"). The Debtor announced that it was willing to modify the plan to address the Santander Objection. Wharton County filed an objection as well. ("Wharton Objection"). The Debtor agreed to amend the treatment of Class 3 to address the Wharton Objection. The Court finds that the Plan as modified should be confirmed.

IT IS THEREFORE ORDERED that Debtor's Amended Plan of Reorganization dated December 7, 2023 is modified to substitute the following language for Class 3:

**4.03    Class 3—Secured Claim of Wharton County**

(a) Wharton County shall retain its pre- and post-petition statutory ad valorem tax liens upon the taxable property set forth in Wharton County's claims until each applicable year's taxes have been fully satisfied in accordance with this confirmed plan.

(b) The Reorganized Debtor shall pay Wharton County's Claim #1 in the amount of $84,453.73 plus interest of 1% per month accruing from the petition date to the Effective Date and from the Effective Date until paid in full in equal monthly payments beginning March 1, 2024 and ending December 1, 2026. The Reorganized Debtor shall pay Wharton County's Claim #39 in the amount of $46,001.06 plus interest of 1% per month accruing from February 1, 2024 to the Effective Date and from the Effective Date until paid in full in equal monthly payments beginning March 1, 2024 and ending on December 1, 2026. The combined monthly payment shall be $5,085.00, made payable to Wharton County Tax Assessor-Collector and remitted to McCreary, Veselka, Bragg and Allen, PC, Attn:  Bankruptcy Dept., PO Box 1269, Round Rock, TX 78680-1269.

(c) Should the Reorganized Debtor fail to make any of the equal monthly payments to Wharton County as required in this Plan, Wharton County shall provide written notice of that default by email to Reorganized Debtor's counsel at ssather@bn-lawyers.com advising of said default and providing the Reorganized Debtor with a period of twenty-one (21) days from the date the

email is sent to cure the default(s).  If the Reorganized Debtor fails to cure the default(s) within said twenty-one (21) day period, Wharton County may, without further order of this Court or notice to the Reorganized Debtor, pursue all available rights and remedies available under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed on the defaulted account(s).  The Reorganized Debtor shall be entitled to two (2) Notices of Default.  In the event of a third (3rd) default, Wharton County may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this Court or further notice to the Reorganized Debtor on all of the delinquent ad valorem accounts.

(d) The Reorganized Debtor shall pay all post-confirmation taxes timely prior to the state law delinquency date in the ordinary course of business, beginning with the 2024 tax year taxes.   If the Debtor fails to pay the 2024 taxes or subsequent year taxes years prior to the state law delinquency date, all penalties and interest allowable under the Texas Tax Code shall accrue thereon until the Reorganized Debtor fully pays said year's taxes.  If the Reorganized Debtor fails to pay the 2024 or a subsequent year's taxes timely, the automatic stay as to the applicable unpaid tax account and collateral and Wharton County shall automatically terminate, and Wharton County shall be entitled to pursue all of its rights and remedies under the Texas Property Tax Code in state district court without further order of this Court or further notice to the Reorganized Debtor.  Wharton shall not be required to file an administrative expense claim for the 2024 or subsequent year taxes.  without the need of the taxing authorities to file an administrative expense claim and/or request for payment pursuant to 11 U.S.C. 503(b)(1)(D).

(e) As to the Yard Property, the $1,000,000.00 lien to be granted to the Litigation Trustee pursuant to 4.11.03 of the confirmed plan shall not prime the ad valorem tax liens of Wharton County thereon.  Further, any conveyance by the Reorganized Debtor of the Yard Property to Texas Quality Mats, LLC as contemplated by 4.11.05 of the confirmed plan shall be subject to the ad valorem tax liens thereon and their statutory lien priority and said liens shall remain attached to the Yard Property.

(f) Class 3 is impaired.

IT IS THEREFORE ORDERED that Debtor's Amended Plan of Reorganization dated December 7, 2023 is modified to substitute the following treatment for Class 8:

4.08 **Class 8—Secured Claim of Santander Consumer USA.**

4.08.01 Class 8 shall consist of the Secured Claim of Santander Consumer USA.

4.08.02 Santander Consumer USA shall retain its liens under the Plan.

4.08.03 The Debtor shall surrender the 2018 Dodge Charger #7425 to Santander Consumer USA in full satisfaction of the secured portion of the claim. Santander Consumer USA, Inc. may amend its claim to assert an unsecured claim for any balance remaining after liquidation of its collateral within thirty days after the Effective Date.

4.08.04 Class 8 is impaired.

IT IS THEREFORE ORDERED that Debtor's Amended Plan of Reorganization dated December 7, 2023 as modified above, a copy of which is attached hereto, is hereby confirmed.

IT IS FURTHER ORDERED that the Effective Date shall be May 1, 2024.

IT IS FURTHER ORDERED that Jourdaine Poupore is appointed as Litigation Trustee under the Plan.

IT IS FURTHER ORDERED that the Debtor shall promptly execute the Litigation Trust Agreement and the proposed deed of trust on the "Yard Property."

IT IS FURTHER ORDERED that the Debtor shall file and serve a notice of the Effective Date and notice of all deadlines arising under the Plan to all creditors and parties in interest.

Signed:  March 20, 2024

Christopher Lopez
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

|  |  |  |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **DAVID MICHAEL MOBLEY** | ) | **Case No. 22-60004-CML** |
| **Debtor.** | ) | |
| | ) | **Chapter 11** |
| | ) | |
| | ) | |

<u>**DEBTOR'S AMENDED PLAN OF REORGANIZATION DATED OCTOBER 18, 2023**</u>

Stephen W. Sather
**BARRON & NEWBURGER, P.C.**
7320 N. MoPac Expwy., Suite 400
Austin, Texas 78731
(512) 476-9103
(512) 476-9253 (Facsimile)

ATTORNEYS FOR DEBTOR-IN-POSSESSION

# TABLE OF CONTENTS

**ARTICLE I - DEFINITIONS AND USE OF TERMS**........................................................ 1
1.01   **Defined Terms.** ......................................................................................... 1
1.02   **Number and Gender of Words** ................................................................ 6
1.03   **Terms Defined in the Bankruptcy Code** ................................................ 6
1.04   **Headings.** ................................................................................................... 6
1.05   **Time Computation** .................................................................................... 6
**ARTICLE II - CONCEPT OF PLAN** .................................................................................. 6
2.01   **Generally** .................................................................................................... 6
**ARTICLE III - PROVISIONS APPLICABLE TO ALL CLAIMS** ................................. 6
3.01   **Treatment of Claims** ................................................................................. 6
3.02   **Allowed Claims** .......................................................................................... 6
3.03   **Amount of Claims.** ..................................................................................... 6
3.04   **Allowance of Post-Petition Interest, Fees and Costs** ............................ 7
3.05   **Filing of Claims Arising From Rejection of Unexpired Leases or Executory**
        **Contracts** .................................................................................................... 7
3.06   **Filing of Administrative Claims** .............................................................. 7
3.07   **Cure Claims** ............................................................................................... 7
3.08   **Claims Arising from Avoidable Transfers** ............................................. 7
3.09   **Filing of Requests for Post-Petition Fees or Costs** ............................... 7
3.10   **Objections to Claims.** ................................................................................ 7
**ARTICLE IV - CLASSIFICATION AND TREATMENT OF CLASSES UNDER THE**
**PLAN** .......................................................................................................................... 8
4.01   **Class 1—Administrative Expense Claims** .............................................. 8
4.02   **Class 2—Priority Claims** .......................................................................... 8
4.03   **Class 3—Secured Tax Claim of Travis County** ..................................... 8
4.04   **Class 4—Secured Claim of Mauriene Howey** ........................................ 9
4.05   **Class 5—Secured Claim of Greater Texas Federal Credit Union** ........... 9
4.06   **Class 6—Secured Claim of Wells Fargo Bank, N.A.** ............................. 9
4.07   **Class 7—General Unsecured Claims** ..................................................... 10
4.08   **Class 8—Equity Interests** ....................................................................... 12
**ARTICLE V - MEANS FOR IMPLEMENTATION OF PLAN** .................................... 12
5.01   **Disbursement Agent** ................................................................................ 12
5.02   **Management of the Reorganized Debtor** .............................................. 12
5.03   **Payment of Fees and Expenses** .............................................................. 12
5.04   **Payment of Disposable Income** ....................................**Error! Bookmark not defined.**
**ARTICLE VI - TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED**
**LEASES** ...................................................................................................................... 12
6.01   **Assumption** .............................................................................................. 12
6.02   **Rejection** .................................................................................................. 12
**ARTICLE VII - PROVISIONS FOR THE RETENTION, ENFORCEMENT,**
**SETTLEMENT, OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR**
**AND THE ESTATE INCLUDING PREFERENCES AND CONVEYANCES** ................. 13
7.01   **Avoidance Actions**......................................................**Error! Bookmark not defined.**
7.02   **Debtor's Other Bankruptcy and Non-Bankruptcy Causes of Action** .............**Error!**

i

**Bookmark not defined.**

**ARTICLE VIII - EFFECT OF CONFIRMATION** ................................................................. 14

8.01    **Discharge** ........................................................................................................ 14

8.02    **Status of Property of the Estate After Confirmation** .................................... 14

8.03    **Binding Nature of Plan** .................................................................................. 14

**ARTICLE IX - MODIFICATION OF PLAN** ...................................................................... 14

9.01    **Modification to the Plan** ................................................................................ 14

**ARTICLE X - POST-CONFIRMATION PROCEDURE** ....................................................... 14

10.01   **Application for Final Decree** .......................................................................... 14

10.02   **U.S. Trustees Matters** .................................................................................... 15

**ARTICLE XI - DEFAULT AND OTHER RELATED PROVISIONS** ...................................... 15

**ARTICLE XII - RETENTION OF JURISDICTION** .......................................................... 15

12.01   **Allowance of Claims** ...................................................................................... 15

12.02   **Proceedings Related to Executory Contracts and Unexpired Leases** .......... 15

12.03   **Plan Interpretation** ........................................................................................ 15

12.04   **Plan Interplementaion** ................................................................................... 16

12.05   **Plan Modification** .......................................................................................... 16

12.06   **Adjudication of Controversies** ...................................................................... 16

12.07   **Injunctive Relief** ............................................................................................ 16

12.08   **Interpleader Action** ....................................................................................... 16

12.09   **Correct Minor Defects** .................................................................................. 16

12.10   **Authorization of Fees and Expense** ............................................................... 16

12.11   **Post-Confirmation Orders Regarding Confirmation** ..................................... 16

12.12   **Final Decree** .................................................................................................. 16

**ARTICLE XIII - MISCELLANEOUS PROVISIONS** ......................................................... 16

13.01   **Request for Relief Under 11 U.S.C. § 1129(b)** ............................................... 16

13.02   **Revocation** ..................................................................................................... 16

13.03   **Effect of Withdrawal or Revocation** ............................................................. 17

13.04   **Due Authorization by Creditors** ................................................................... 17

13.05   **Entire Agreement** .......................................................................................... 17

13.06    **Section 1146 Exemption** ............................................................................... 17

13.07   **Provisions Governing Distributions** ............................................................. 17

13.08   **Governing Law** .............................................................................................. 18

13.09   **Post-Confirmation Noticing** .......................................................................... 18

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | |
|---|---|
| **In re:** ) | |
| ) | **Case No. 22-60004-CML** |
| **DAVID MICHAEL MOBLEY** ) | |
| **Debtor.** ) | **Chapter 11** |
| ) | |
| ) | |

---

### DEBTOR'S  AMENDED PLAN OF REORGANIZATION DATED OCTOBER 18, 2023

**David Michael Mobley** ("Debtor") proposes the following   Amended Plan of Reorganization ("Plan") Dated October 18, 2023, pursuant to chapter 11 of title 11, United States Code ("Bankruptcy Code" or "Code").

### ARTICLE I
### DEFINITIONS AND USE OF TERMS

1.01    **Defined Terms.**  Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Section 1.01.

1.01.01    **Administrative Expense Claim** means an administrative expense or Claim described in 11 U.S.C. § 503 and entitled to administrative priority pursuant to 11 U.S.C. § 507(a)(1), including but not limited to Claims for compensation of professionals made pursuant to 11 U.S.C. §§ 330 and 331 which arose after the Petition Date.

1.01.02    **Administrative Tax Claim** means an Unsecured Claim by a governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

1.01.03    **Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (i) a Proof of Claim, Proof of Interest, or request for payment was timely filed or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent or unliquidated, and to which no objection has been timely filed or, if filed, is allowed by a Final Order.

1.01.04    **Allowed Secured Claim** means an Allowed Claim secured by a lien, security interest or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.01.05 **Avoidance Actions** shall mean actions to avoid and recover transfers under 11 U.S.C. §§ 544, 545, 546, 547, 548, 549 or 553(b) or under state law, as may be appropriate.

1.01.06 **Ballot** means the document approved by the Bankruptcy Court for voting on the Plan and for holders of Class Claims to elect their treatment option.

1.01.07 **Bankruptcy Code** or **Code** means the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

1.01.08 **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Texas, or such other Court that may have jurisdiction with respect to Debtor's chapter 11 case, including the United States District Court for the Southern District of Texas to the extent reference of the chapter 11 Case is withdrawn.

1.01.09 **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Debtor's chapter 11 Case.

1.01.10 **Bar Date** means the date subsequent to which a proof of pre-petition Claim may not timely be filed or the date by which proofs of claims held by governmental agencies must be filed.

1.01.11 **Business Day** means any date except Saturday, Sunday or any other day on which commercial banks in Victoria, Texas, are authorized by law to be closed for business.

1.01.12 **Case** means this chapter 11 bankruptcy case in this Bankruptcy Court.

1.01.13 **Claim** means (i) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.01.14 **Claimant** means any person or entity having or asserting a Claim in this case.

1.01.15 **Class** or **Classes** mean all of the holders of Claims or Interests that the Debtor have designated pursuant to 11 U.S.C. § 1123(a)(1) as having substantially similar characteristics as described in Article IV of this Plan.

1.01.16 **Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

1.01.17 **Confirmation Date** means the date on which the Confirmation Order is entered.

1.01.18        **Confirmation Order** means the Order of the Court confirming the Plan pursuant to 11 U.S.C. § 1129.

1.01.19        **Contested** when used with respect to a Claim means a Claim against the Debtor that (a) is listed in the Debtor' Schedules of Assets and Liabilities as disputed, contingent or unliquidated; (b) is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) has had or is subject to an objection being timely filed and has not been denied by Final Order.  To the extent an objection related to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the Objection.

1.01.20        **Creditor** shall have the meaning specified by 11 U.S.C. § 101(9) of the Code.

1.01.21.       **Cure Claim** means the amount necessary to cure any default or arrearage, together with the amount necessary to compensate for damages suffered as a result of such default or arrearage, on an unexpired lease or executory contract which has been assumed pursuant to 11 U.S.C. § 365.

1.01.22        **Debtor** means David Michael Mobley, the Debtor in the above-captioned chapter 11 Case.

1.01.23        **Disputed Claim** means any Claim as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by Final Order.

1.01.24        **Effective Date** means the first day of the calendar month after entry of the Confirmation Order unless the Court rules otherwise.

1.01.25.       **Estate** means the estate created pursuant to 11 U.S.C. § 541 with respect to the Debtor.

1.01.26        **Equity Interest or Interest** means the Debtor' ownership interest in their property.

1.01.27        **Fee Claim** means a Claim under 11 U.S.C. § 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the Debtor Case.

1.01.28        **Filed** means delivered to the Clerk of the Bankruptcy Court or filed electronically.

1.01.29        **Final Order** means an Order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties as to which the time to appeal has expired and as to which a stay pending appeal has not been granted.

1.01.30     **General Unsecured Claim** means an Unsecured Claim that is not entitled to priority under 11 U.S.C. § 507(a).

1.01.31     **Impaired** means the treatment of an Allowed Claim pursuant to the Plan *unless,* with respect to such Claim, either (a) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (i) cures any default that occurred before or after the commencement of the Case on the Petition Date, other than default of the kind specified in 11 U.S.C. § 365(b)(2), (ii) reinstates the maturity of such Claim as such maturity existed before such default, (iii) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (c) the Plan provides that on the Effective Date the holder of such claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

1.01.32     **Lien** shall mean a contractual or statutory lien against an interest of the Debtor in real or personal property.

1.01.33     **Litigation Trustee Agreement** shall mean that one certain Litigation Trustee Agreement in substantially the form of the attached Exhibit C.

1.01.34     **Litigation Trustee** shall mean  Jourdain Poupore or such successor who may be appointed pursuant to the terms of this Plan.

1.01.35.     **Market Rate of Interest** means an interest rate sufficient to provide the present value of a claim pursuant to 11 U.S.C. §§ 1129(a)(9) or 1129(b) as may be appropriate.  A Market Rate of Interest shall be the Prime Rate of interest on the date of the Confirmation Order plus 1% unless the parties agree on another rate or the Court determines otherwise with regard to a specific Class of Claims.

1.01.36     **Oversecured Claim** means a Claim which is secured by property which is valued at more than the amount of the Claim.  An Oversecured Claim shall be entitled to receive post-petition interest at the non-default contract rate and may also receive post-petition fees and costs if authorized by a contract.

1.01.37     **Person** means an individual, partnership, or corporation, but does not include a governmental unit unless the government unit acquires an asset as a result of operation of a loan guarantee agreement, or as receiver or liquidating agent, in which case such governmental unit shall be considered a person for purposes of 11 U.S.C. § 1102 Code.

1.01.38.     **Petition Date** means January 21, 2022, the date on which the Debtor filed their petition for relief in this Case.

1.01.39.     **Plan** means this Plan of Reorganization, as it may be amended, modified or supplemented by the Debtor from time to time as permitted herein and by the Bankruptcy Court.

1.01.40     **Pre-petition** means prior to the Petition Date.

1.01.41     **Plan Supplement** shall be the document filed by the Debtor at least seven days prior to the Confirmation Hearing containing the proposed proposed assignment of claims to the Litigation Trust.

1.01.42     **Preserved Claims** shall mean those claims described in Article VII of the Plan as Preserved Claims and attached hereto as Exhibit A.

1.01.43     **Prime Rate** shall mean the prime rate published by the Wall Street Journal on a given day.

1.01.44     **Priority Creditor** means a Creditor whose Claim is entitled to priority under 11 U.S.C. § 507.

1.01.45     **Pro-Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

1.01.46     **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in 11 U.S.C. § 541.

1.01.47     **Quality Companies** shall mean Quality Lease and Rental Holdings, LLC, Quality Lease Rental Service, LLC, Quality Lease Service, LLC and Roscaceia, LLC.

1.01.48     **Rejection Claim** means any Claim arising pursuant to 11 U.S.C. § 502(g) by reason of rejection by the Debtor of an executory contract or unexpired lease pursuant to 11 U.S.C. § 365 or 1123(b)(2).

1.01.49     **Released Claims** shall mean those claims described in Article VII of this Plan as Released Claims.

1.01.50     **Reorganized Debtor** means the Debtor after the Effective Date of the Plan.

1.01.51     **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest, in property in which the Debtor or either of them has an interest to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.01.52     **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

1.01.53.     **Settlement Agreement** means the Mediated Term Sheet entered into on December 1, 2022 in this case, a copy of which is attached hereto as Exhibit B, and approved by

the Court on January 6, 2023 (Dkt. 164).

1.01.54.__  **Yard Deed of Trust** shall mean the Deed of Trust pledging the Yard Property pursuant to the terms of this Plan which shall be in the form of the attached Exhibit D.

1.01.55.  **Yard Property** means the property owned by the Debtor located at 480 CR 335, El Campo, Texas 77437.

1.02  **Number and Gender of Words.**  Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context.  Words of any gender shall include each other gender where appropriate.  The terms Debtor and Debtor shall refer to each of the Debtor unless specifically identified to refer to a specific Debtor.

1.03  **Terms Defined in the Bankruptcy Code.**  Capitalized terms not specifically defined in Section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

1.04  **Headings.**  The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

1.05  **Time Computation.**  In computing any time prescribed herein the provision of Fed. R. Bankr. P. 9006(a) shall apply.

## ARTICLE II
### CONCEPT OF PLAN

2.01  **Generally.**  The Debtor shall pay at least  his disposable income to creditors in accord with the Settlement Agreement.

## ARTICLE III
### PROVISIONS APPLICABLE TO ALL CLAIMS

3.01  **Treatment of Claims.**  This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 502(a).  However, only Allowed Claims will receive treatment afforded by the Plan.  The Plan is designed to ensure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to chapter 7 of the Bankruptcy Code.

3.02  **Allowed Claims.**  To receive a distribution under the Plan, a Creditor must have an Allowed Claim.

3.03  **Amount of Claims.**  If the Debtor have scheduled a Claim and have not indicated that such Claim is disputed, contingent, or unliquidated, then the amount scheduled by the Debtor

shall control unless the Creditor files a Proof of Claim in a different amount or a party in interest files an objection to the scheduled claim.  If a creditor files a Proof of Claim, then the amount stated in the Proof of Claim shall control unless a party in interest files an objection to the Claim. If a party in interest files an objection to a Proof of Claim or a scheduled claim, then the amount determined by the Court in a Final Order shall control.

3.04    **Allowance of Post-Petition Interest, Fees and Costs.**  Unless otherwise provided by a statute applicable to cases under title 11, a Claim shall not be entitled to post-petition interest, fees or costs.  An Oversecured Claim shall be entitled to interest at the non-default contract or statutory rate from the date of the Petition until the Confirmation Date.  An Oversecured Claim arising under a contract shall be entitled to post-petition fees and costs if the contract so provides and if an application for allowance of post-petition fees and costs is timely filed and approved by the Court by a Final Order.  A Claim may be determined to be an Oversecured Claim if so designated by the Plan or if determined by the Court by a Final Order.

3.05    **Filing of Claims Arising From Rejection of Unexpired Leases or Executory Contracts.**  Any Claims arising from the rejection of unexpired leases or executory contracts shall be filed by the date specified in the order rejecting such lease or contract.  If no date is specified, the date for filing a Rejection Claim shall be deemed to be the later of thirty (30) days after the Effective Date or thirty (30) days after entry of the order rejecting the lease or contract.

3.06    **Filing of Administrative Claims.**  Any requests for allowance of Administrative Expense Claims which are not listed in Paragraph 4.01.01 below or are listed without an amount must be filed within thirty (30) days after the Effective Date or shall be barred.

3.07    **Cure Claims.**  Any Cure Claims shall be filed within thirty (30) days after the Effective Date or shall be barred unless otherwise agreed to by the parties.

3.08    **Claims Arising from Avoidable Transfers.**  A person who is found to have received a voidable transfer shall have thirty (30) days following the date from which the order ruling that such transfer is avoidable or approving the settlement of a suit on an avoidable transfer becomes a Final Order in which to file a Claim in the amount of the settlement or the avoided transfer, which is less.  The Liquidating Trustee may object to any such claim within sixty (60) days of the claim being filed.

3.09    **Filing of Requests for Post-Petition Fees or Costs.**  Any requests for allowance of post-petition fees or costs pursuant to 11 U.S.C. § 506(b) shall be filed within thirty (30) days after the Effective Date or shall be barred.

3.10    **Objections to Claims.**  Any party authorized by the Bankruptcy Code may object to the allowance of a Pre-Petition Claim at any time prior to fifteen (15) days after the Effective Date or ten (10) days after such claim is filed, which is later.  Any Proof of Claim filed after the bar date(s) set by the Court shall be of no force and effect and shall be deemed disallowed.  All Contested Claims shall be litigated to Final Order; *provided, however*, that the Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court.

## ARTICLE IV
### CLASSIFICATION AND TREATMENT OF CLASSES UNDER THE PLA

4.01    **Class 1—Administrative Expense Claims**

4.01.01        Administrative Expense Claims consist of expenses incurred during the chapter 11 proceeding prior to confirmation which are approved by the Court and expenses incurred in operating the Debtor' business.  The estimated future UST fees are also included in this class although payment is not required until the fees are due. Most administrative expense claims consist of claims by professionals employed by the Bankruptcy Estate.  The Debtor are aware of the following Class 1 Administrative Claims:

4.01.02        No Administrative Expense Claims for professional fees shall be allowed except pursuant to Court order.

4.01.03        Unless otherwise agreed, each holder of a Class 1 claim shall be paid in full on the later of the Effective Date or on the date that a final order is entered approving or allowing the Administrative Expense Claim or the claim for professional fees or as due under applicable law.

4.01.04        Class 1 is not impaired.

4.02    **Class 2—Priority Claims**

4.02.01        Class 2 consists of Claims entitled to Priority under 11 U.S.C. § 507(a).

4.02.02        The Class 2 claim, if any, shall be paid on the Effective Date is such claim is allowed in the amount of $5,000 or less. If the claim is allowed at an amount in excess of $5,000, it shall be payable in sixty (60) equal monthly installments including interest at the rate of 4% per annum.

4.02.03        Class 2 is not impaired.

4.03    **Class 3—Secured Claims of Wharton County and Matagorda ISD**

4.03.01        Class 3 shall consist of the Secured Claims of Wharton County and Matagorda ISD.

4.03.02        The Class 3 Creditor shall retain its lien upon the Debtor's property. Class 3 shall be entitled to interest from the petition date to the confirmation date at the rate of 1% per month.

4.03.03        The Debtor shall pay Class 3 in sixty (60) equal monthly installments including interest at the rate of 1% per month.

4.03.04          Class 3 is impaired.

**4.04     Class 4—Secured Claim of First Financial Bank**

4.04.01          Class 4 consists of the Secured Claim of First Financial Bank.

4.04.02          First Financial Bank shall retain its lien under the Plan.

4.04.03          Debtor shall continue to make the regular contractual payments to First Financial Bank in the amount of $16,298.54.   Interest shall continue to accrue at the contractual rate.

4.04.04          Class 4 is impaired.

**4.05     Class 5—Secured Claims of Ford Motor Credit**

4.05.01          Class 5 consists of the Secured Claims of Ford Motor Credit consisting of the following accounts:

| Code | Account No. | Vehicle | VIN | Payment amt | Next pmt due | Remaining pmts | 10-day payoff |
|------|-------------|---------|-----|-------------|--------------|----------------|---------------|
| MOBLEY3 | XXXX3685 | 2021 Ford F350 | 1FT8W3BT9MEC88037 | $1,991.85 | 10/30/23 | 18 | $34,157.94 |
| MOBLEY4 | XXXX7371 | 2019 Ford F350 | 1FT8W3BT3KEG71033 | $2,035.34 | 10/23/23 | 4 | $9,530.56 |

4.05.02          Class 5 shall retain its liens under the Plan.

4.05.03          Debtor and/or Texas Quality Mats, LLC shall continue to make the regular monthly payments on the vehicles financed by Ford Motor Credit in accordance with the terms of the respective Texas Motor Vehicle Retail Installment Sales Contracts, the default provisions of which shall control notwithstanding any provision to the contarary contained in the Agreed Order Conditioning Automatic Stay as to Four (4) Ford Vehicles (Dkt. #94) or this Plan.

4.05.04          Class 5 is unimpaired.

**4.06     Class 6—Secured Claim of Internal Revenue Service.**

4.06.01          Class 6 shall consist of the Secured Claim of the Internal Revenue Service.

4.06.02        The Internal Revenue Service shall retain its liens under the Plan.

4.06.03        The Internal Revenue Service shall receive payment of its claim in sixty (60) equal monthly installments including the statutory rate of interest in effect on the Confirmation Date.

4.06.04        Class 6 is impaired.

## 4.07   Class 7—Secured Claim of People's United Equipment Finance Corp.

4.07.01        Class 7 shall consist of the Secured Claim of People's United Equipment Finance Corp.

4.07.02        People's United Equipment Finance Corp. shall not retain its liens under the Plan.

4.07.02        The Class 7 creditor has been paid in full and will not receive any further payments. Its liens shall be deemed satisfied.

4.07.04        Class 7 is impaired.

## 4.08   Class 8—Secured Claim of Santander Consumer USA.

4.08.01        Class 8 shall consist of the Secured Claim of Santander Consumer USA.

4.08.02        Santander Consumer USA shall retain its liens under the Plan to the extent of the value of its collateral. Unless the Court rules otherwise, the value of the collateral shall be fixed at $500.00. The remaining claim of Santander shall be an unsecured claim.

4.08.03        The Debtor shall pay Santander $500.00 on the Effective Date in full satisfaction of its secured claim (but not its unsecured claim).

4.08.04        Class 8 is impaired.

## 4.09   Class 9—Unsecured Claims of Less than $75,000.00

4.09.01        Class 9 shall consist of Allowed Unsecured Claims of less than $75,000.00.

4.09.02        The Class 9 claims shall receive a single payment of 10% of the amount of their Allowed Claims on the Effective Date or the date that a claim becomes an Allowed Claim, whichever is later.

4.09.03        Any Class 9 creditor may elect to be treated under Class 11. Any Class 9 creditors which votes to reject the plan shall be deemed to have elected Class 11 treatment.

4.09.03        Class 9 is impaired.

### 4.10    Class 10—Guaranty Claims

4.10.01        Class 10 shall consist of unsecured claims where the Debtor is a guarantor of the obligation of a third party where that third party is still in business and making the payments upon the claim. Texas Champion Bank shall not fall within this class

4.10.02        Claims falling within Class 10 shall be paid by their principal obligor. The Debtor's guaranty shall remain in force and may be enforced by the creditor in the event of a default by the principal obligor.  These claims shall be paid in full.

4.10.03        Class 10 is unimpaired.

### 4.11    Class 11--Unsecured Claims of More Than $75,000

4.11.01        Class 11 shall consist of Allowed Unsecured Claims of more than $75,000 which are not Guaranty Claims.  Pursuant to the Settlement Agreement, the Quality Companies shall hold a Class 11 Unsecured Claim in the amount of $40,000,000.

4.11.02        The Class 11 Unsecured Creditors shall receive three forms of payment: Classes 1-10, and Class 12 shall not be entitled to any of these funds, and they shall be paid from other funds available to the Debtor.

> (a) Any amounts recovered by the Litigation Trustee net of expenses incurred by the Litigation Trustee shall be distributed pro rata to the Class 11 Creditors.

> (b) The Debtor shall pay $5,000.00 per month for 60 months beginning on the Effective Date.

> (c) The sum of $1,600,000.00 shall be paid by the Debtor and/or Texas Quality Mats, LLC according to the following schedule:
> > (i) $5,000.00 per month for the first twenty-four months after the Effective Date;
> > (ii) $10,000.00 per month for the next twelve months;
> > (iii) $15,000.00 per month for the next twelve months;
> > (iv) $20,000.00 per month for the next twelve months; and
> > (v) A balloon payment of $940,000.00 shall be due sixty (60) months after the Effective Date.

4.11.03        The Debtor shall grant the Litigation Trustee a lien on the Yard Property in the amount of $1,000,000.00 to secure the payment of $1,600,000 in paragraph 4.11.02(c) above.

4.11.04        Texas Quality Mats, LLC shall be jointly and severally liable with the Debtor for the timely payment of Class 11 Unsecured Creditors.

4.11.05        The Debtor shall be authorized to convey the Yard Property to Texas Quality Mats, LLC upon final payment to the Class 11 creditors.

4.11.06.         Class 11 is impaired.

4.12    **Class 12—Equity Interests**

4.12.01        Class 12 consists of the Equity Interest of the Debtor.

4.12.02        The Debtor shall retain his interests in property. Within thirty (30) days after entry of the Confirmation Order, the Quality Companies shall withdraw their objection to the Debtor's homestead exemption.

4.12.03        Class 12 is unimpaired.


# ARTICLE V
## MEANS FOR IMPLEMENTATION OF PLAN

5.01    **Disbursing Agent.**  The Reorganized Debtor shall be the disbursing agent for the Plan for all Allowed Claims other than Class 11. The Litigation Trustee shall be the disbursing agent for the Class 11 claims.

5.02    **Management of the Reorganized Debtor.**  The Debtor shall continue to manage his business affairs.

5.03    **Payment of Fees and Expenses.**  The Reorganized Debtor may pay reasonable attorney's fees and out of pocket expenses incurred in the implementation of this Plan.


# ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    **Assumption.**  Unless ordered otherwise by the Court, no executory contracts or unexpired leases shall be assumed.

6.02    **Rejection.**  Unless ordered otherwise by the Court, all executory contracts and unexpired leases shall be rejected.  The Debtor believes that any executory contracts in existence on the Petition Date have been terminated.


# ARTICLE VII
## PROVISIONS FOR THE RETENTION, ENFORCEMENT, SETTLEMENT,
## OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR AND THE ESTATE
## INCLUDING PREFERENCES AND CONVEYANCES AS WELL AS LITIGATION WITH QUALITY

## LEASE AND RENTAL HOLDINGS, LLC, ET AL

7.01   **The Litigation Trustee.**

(a) The Litigation Trustee shall be an estate representative pursuant to 11 U.S.C. §1123(b)(3)(B). The Litigation Trustee shall be vested with the full power and authority to pursue, compromise or release the Preserved Claims.

(b) The Litigation Trustee shall be entitled to compensation on an hourly basis as well as reimbursement of expenses. Such compensation and expenses shall be paid out of the funds recovered by the Litigation Trustee.

(c) The Litigation Trustee shall be entitled to retain counsel and other professionals to represent him.

(d) The Litigation Trustee shall be entitled to payment of compensation and reimbursement of expenses and shall be entitled to compensate any professional retained by the Trustee by filing a Notice of Intent to Pay Professional Fees with the Court and serving such Notice upon the Class 11 creditors. If no party shall object within fourteen (14) days, the Trustee shall be entitled to make the proposed payment. If a party in interest shall object, the Trustee shall be entitled to make such payment to the extent authorized by the Court following notice and a hearing.

7.02   **The Released Claims.**   Entry of the Confirmation Order shall release any and all claims and causes of action which the Debtor or the Estate may hold against Texas Quality Mats, LLC, Lisa Mobley, Allan Martin and/or The Quality Companies; provided that such release shall not affect the obligations of Texas Quality Mats, LLC under this Plan.

7.03.   **The Preserved Claims.**   All other claims and causes of action belonging to the Debtor other than the Released Claims shall be preserved and shall be assigned to the Litigation Trustee. For purposes of clarity, the claims all potential claims related to the claims described in the Examiner's Report of Drew McManigle dated May 30, 2023 are preserved. (see attached Exhibit A).

7.04   **The Quality Companies Adversary Proceeding.**   The parties shall enter into an Agreed Judgment in Adv. No. 22-6024 awarding the Plaintiffs a non-dischargeable judgment against the Debtor in the amount of $2,250,000. Any amounts received by the Plaintiffs as creditors under this Plan shall be credited against the non-dischargeable judgment. The Plaintiffs shall forebear from exercising any collection remedies for a period of six years after entry of the Confirmation Order. The Agreed Judgment shall not be interest during the six year forbearance period. At the conclusion of the six year forbearance period, the Agreed Judgment shall begin to accrue interest at the then-applicable federal judgment rate.

7.05    **The Settlement Agreement.** All of the terms of the Settlement Agreement shall be deemed to be incorporated into this Plan and binding upon the Parties to the Settlement Agreement regardless of whether they are expressly stated int this Plan.


# ARTICLE VIII
## EFFECT OF CONFIRMATION

8.01    **Discharge.**  The Debtor shall receive a discharge of their liability on all of the debts treated by the Plan upon the conclusion of payments under the Plan. To be clear, if Debtor make the payments required by this Plan, he shall have no further liability on any of the debts treated by the Plan save and except for non-dischargeable judgment to be entered in Adv. No. 22-6024.

8.02    **Status of Property of the Estate After Confirmation.**  Confirmation of the Plan shall vest the Property of the Estate in the Debtor free and clear of all claims and liens except as expressly provided in the Plan; provided that if the Plan is not substantially consummated, the property of the Estate shall revest in the Estate upon conversion to chapter 7 or entry of an order revoking confirmation of the Plan.

8.03    **Binding Nature of Plan.**  Pursuant to 11 U.S.C. § 1141, the provisions of the confirmed Plan shall bind the Debtor and its Creditors and the holders of its Equity Securities existing as of the Effective Date, whether or not the Claim or Equity Interest is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted the Plan.   The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.


# ARTICLE IX
## MODIFICATION OF PLAN

9.01    **Modification to the Plan.**  In accordance with 11 U.S.C. § 1127 and Fed R. Bankr. P. 3019, to the extent applicable, Debtor may modify or amend the Plan prior to the Confirmation Date, provided that notice and an opportunity for hearing are given to any affected party and the Court finds that the proposed modification or correction does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted the modification in writing.  Debtor may modify the Plan after Confirmation and before substantial consummation as long as the modification complies with the requirements of 11 U.S.C. §§ 1122 and 1123 and the Plan as modified will become the Plan if, after notice and hearing, the Court finds that circumstances warrant such modification and confirms the Plan as modified.


# ARTICLE X
## POST-CONFIRMATION PROCEDURE

10.01   **Application for Final Decree.**  The Debtor shall file an application for final decree not later than one hundred and twenty (120) days after the Litigation Trustee certifies that he has

completed all litigation which he intends to be pursued..  If the Plan cannot be substantially consummated as that term is defined in 11 U.S.C. § 1101(2) during this time period or if there are still pending matters to be ruled upon by the Court, the Debtor shall seek an extension of such deadline from the Court.  If the Debtor fail to file an Application for Final Decree prior to such deadline or fails to timely request an extension of the same, then the Court, on its own motion or at the request of any party in interest, including the United States Trustee, may enter an order closing the Debtor' case.

10.02  **U.S. Trustees Matters**

10.02.01      **Fees.**  The Debtor shall continue to pay U.S. Trustee fees until the case is closed, dismissed or converted.

10.02.02.      **Reports.**  The Debtor shall file post-confirmation reports in the form prescribed by the United States Trustee until the case is closed.

## ARTICLE XI
### DEFAULT AND OTHER RELATED PROVISIONS

11.01.  In the event of a default by the Debtor under the Plan (which explicitly includes the failure to pay fees to the United States Trustee as they come due), creditors or affected parties may exercise any rights granted to them under documents executed to evidence the Plan or any rights available to creditors under applicable bankruptcy and/or non-bankruptcy law.  In the absence of documents executed to evidence the Plan, this Plan may be enforced as a contract.  Notwithstanding any other provision, any creditor alleging a default shall give the Debtor fifteen (15) days notice and an opportunity to cure before exercising any rights available upon default; no creditor shall be required to give more than three notices of default during the term of this Plan.

## ARTICLE XII
### RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

12.01  **Allowance of Claims**.   To hear and determine the allowability of all claims upon objections to such claims.

12.02  **Proceedings Related to Executory Contracts and Unexpired Leases**.   To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to 11 U.S.C. §§ 365 and 1123 of the Code and Article VI of the Plan.

12.03  **Plan Interpretation**.   To resolve controversies and disputes regarding the interpretation of the Plan.

15

12.04   **Plan Implementation.**   To implement and enforced the provisions of the Plan and enter orders in aid of confirmation and implementation of the plan.

12.05   **Plan Modification.**   To modify the Plan pursuant to 11 U.S.C. § 1127 and applicable Bankruptcy Rules, except that no modification shall be made to the Plan that would impair, diminish or affect in any way the rights of the participants of any of the classes of the Plan without the consent of such class.

12.06   **Adjudication of Controversies.**   To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the debtor.

12.07   **Injunctive Relief.**   To issue any injunction or to other relief as appropriate to implement the intent of the plan, and to enter such further orders enforcing any injunction or other relief issued under the plan or in the confirmation order.

12.08   **Interpleader Action.**   To entertain Interpleader actions concerning assets to be distributed or other assets of the Estate.

12.09   **Correct Minor Defects.**   To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the plan, the conformation order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the plan, provided that the rights of any holder or an allowed claim are not materially and adversely affected thereby.

12.10   **Authorization of Fees and Expense.**   To review and authorize payment of professional fees incurred prior to the effective date.

12.11   **Post-Confirmation Orders Regarding Confirmation.**   To enter and implement such orders as may be appropriate in the event the Confirmation order is, for any reason, stayed, reversed, revoked, modified, or vacated.

12.12   **Final Decree.**   To enter a final decree closing the Case pursuant to Fed. R. Bankr. P. 3022.

## ARTICLE XIII
### Miscellaneous Provisions

13.01   **Request for Relief Under 11 U.S.C. § 1129(b)**.   In the event any impaired Class shall fail to accept this plan in accordance with 11 U.S.C. § 1129(a), Debtor reserves the right to, and does herby request the Court confirm the Plan in accordance with 11 U.S.C. § 1129(b).

13.02   **Revocation.**   The debtor reserves the right to revoke and withdraw this plan at any time prior to the confirmation Date.

13.03   **Effect of Withdrawal or Revocation.**   If the Debtor revoke or withdraws this Plan prior to the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings further proceedings involving the debtor.

13.04   **Due Authorization by Creditors.**   Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim commitments, agreements or understandings express or implied, that may defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

13.05   **Entire Agreement**.   The Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate the Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

13.06   **Section 1146 Exemption.**   Pursuant to 11 U.S.C. § 1146(c), the issuance, transfer or exchange of any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this plan shall not be taxed under any federal, state, or local law imposing a stamp, transfer or similar tax or fee.

13.07   **Provisions Governing Distributions.**

13.07.01       All payments and distributions under the Plan shall be made by the Reorganized Debtor.  Any payments or distributions made by the Debtor pursuant to the Plan or as may be ordered by the Bankruptcy Court, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United Sates mail.

13.07.02       Payments of cash to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

13.07.03       Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth the on the proofs of claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of claim or proof of interest is filed) unless Claimant files with the Court and serves the Reorganized Debtor with a change of address.  All claims for undeliverable distributions shall be made on or before the second anniversary of the effective date.  After such date, all unclaimed property shall remain the property of the debtor and the claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

13.07.04       Checks issued by the Debtor with respect to Allowed Claims shall be null and void if not cashed within ninety (90) days of the day of delivery thereof.  Requests for reissuance of any check shall be made directly to the Debtor by the holder of the Allowed Claim to who such check originally was issued.  Any claim with respect to such a voided check shall be

made within one year after the date of delivery of such check.  After such date, all claims with respect to void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Reorganized Debtor.

13.07.05      No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

13.07.06      The Reorganized Debtor shall not be required to mail any check in the amount of $10.00 or less.  The Reorganized Debtor shall retain such funds until the aggregate amount owed to the creditor exceeds $10.00.  In the alternative, any creditor owed a payment of $10.00 or less may arrange to take delivery of such payment at the Reorganized Debtor's place of business.

13.08   **Governing Law.**   Unless a rule or law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the laws of the State of Texas shall govern the construction and implementation of the plan and any agreements, documents, and instruments executed in connection with the plan, without regard to conflicts of law.

13.09   **Post-Confirmation Noticing.**   Subsequent to the Confirmation Date, the Reorganized Debtor shall not be required to give notice to any creditor whose claim has been disallowed or paid in full.  Except for the Application for Final Decree and subject to the foregoing, if a party is required to give notice in connection with a notice, pleading or application, such notice shall be deemed sufficient if it is sent to:  (a) the Debtor; (b) the attorney for the Debtor; (c) the Reorganized Debtor; (d) the attorney for the Reorganized Debtor; (e) the Office of the United States Trustee; (f) all Secured Creditors to the extent that their Allowed Claims have not been paid in full; and (e) unsecured creditors who request notice or who were in Debtor's twenty (20) largest unsecured creditors.

Respectfully submitted,


    _/S/David Michael Mobley_____
David Michael Mobley

18

**BARRON & NEWBURGER, P.C.**
7320 N. MoPac Expwy., Suite 400
Austin, Texas 78731
(512) 476-9103 Ext. 220
(512) 476-9253 (Facsimile)


By:      /s/Stephen W. Sather
         Stephen W. Sather
         State Bar No. 17657520

ATTORNEYS FOR DEBTOR-IN-POSSESSION

EXHIBIT A



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **DAVID MICHAEL MOBLEY,** | § | **Case No. 22-60004 (CML)** |
| | § | **Chapter 11** |
| **Debtor.** | § | |
| | § | |

## EXAMINER'S REPORT OF DREW MCMANIGLE

Drew McManigle, court-appointed Examiner in the estate of David Michael Mobley ("Mobley" or "Debtor"), Debtor in the above entitled and captured case, investigated potential claims, causes of action and distributions that may be of benefit to the Debtor's estate.

### I.    Introduction

**A.    Background**

1.    On January 21, 2022, (the "**Petition Date**"), the Debtor filed a voluntary petition under Subchapter V Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "**Court**").

2.    The Debtor continues to operate his businesses and manage his properties as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    On December 12, 2022, the Debtor filed his Motion to Compromise and Settle with Quality Lease and Rental Holdings, LLC, Quality Lease Rental Services, LLC, Quality Lease Service, LLC, and Rocaceia, LLC (the "Quality Companies") (the "Motion") [Docket No. 161]. On January 6, 2023, the Court entered the Order Granting Debtor's Motion to Compromise and

Settle with the Quality Companies [Docket No. 164]. Pursuant to the terms of the Mediated Term Sheet attached to the Motion:

- The Quality Companies are allowed a claim in the amount of $40 million.

- A non-dischargeable Agreed Judgment (the "Judgement") was entered in Adv. No. 22-6024, in the amount of $2,250,000. Any funds collected pursuant to the Plan will be credited against the Judgment, and the Quality Companies will forbear further collection against the Judgment for a period of six years after entry of the confirmation order.

- The Plan shall require the Debtor to make certain payments to various classes under the Plan as well as including payments to be made by the Debtor and the Debtor's solely owned company, Texas Quality Mats, LLC.

- The Debtor will grant a lien to a future litigation trustee (the "Litigation Trustee") on the Yard Property in the amount of $1,000,000 to secure the payment of $1,600,000 owed by Texas Quality Mats. The Yard Property is where the company operates. The litigation trustee will be entitled to investigate and prosecute any claims or causes of action, except for the settled claims with the Debtor, Debtor's wife, Lisa Mobley, and Texas Quality Mats, LLC.

4.      On December 13, 20222, Quality Lease Rental Service, LLC, Quality Lease Service, LLC, Quality Lease and Rental Holdings, LLC and Rocaceia, LLC (collectively "Quality Lender") filed a Motion to Appoint Examiner [Docket No. 162]. The Court entered an Order Approving the Appointment of Examiner [Docket No. 175] on January 27, 2023. On February 14, 2023, the U.S. Trustee filed a Motion for Approval of Drew McManigle as Examiner [Docket No. 182]. The Court entered an Order approving the appointment of Drew McManigle as Examiner on March 13, 2023 [Docket No. 186].

## B. **Scope of Engagement**

5.       In connection with this Sub Chapter V Chapter 11 case, Mr. McManigle was appointed Examiner to investigate potential claims, causes of action, and/or fraudulent conveyances (the "Causes of Actions"). Thes efforts included review of court records, bank

statements, depositions, and other related documentation produced by the Debtor and parties related to the litigation with the Quality Companies. Mr. McManigle was to give his opinion on the viability of the Causes of Action and potential recovery therefrom.  This review did not constitute a formal forensic analysis and was limited in scope that excludes the Debtor, David Michael Mobley, Debtor's wife, Lisa Mobley, and the Debtor's solely owned company, Texas Quality Mats, LLC.

### C. **Expert Qualifications**

6.      I am the Founder and CEO of MACCO Restructuring Group, LLC ("MACCO"), an interim management and financial advisory firm with 17 professionals and locations across the country. Its website is www.macco.group. MACCO and its professionals regularly provide interim executive leadership, financial advisory and fiduciary services to businesses across a vast array of industries who find themselves in financial and operational distress. MACCO also serves as a financial or restructuring advisor to lenders, creditors, and creditor groups. I have personally led numerous companies through in and out-of-court restructurings. My experience extends across a variety of industries, including energy exploration, production and refining, healthcare, consumer products, defense, commercial construction, distribution, transportation, heavy equipment, and hospitality, among others. During my 27-plus year career working with clients across the country, I have held leadership and fiduciary roles with titles such as operating chapter 11 trustee, chapter 11 plan, litigation or liquidating trustee, interim chief executive officer, chief restructuring officer, receiver, and assignee.  I have also served as an independent director to various international and domestic companies in chapter 11 proceedings. I have advised or led debtor or creditor constituencies in bankruptcy and state courts. I have participated in complex litigation and testified in Federal, Bankruptcy, State, and international courts.

7.       In February 2020, I was selected by the Office of The U.S. Trustee, Southern District of Texas, as a chapter 11 trustee under 11 U.S.C. Subchapter V. I have served on the Houston Board of Directors of the Turnaround Management Association, and I am a member of the American Bankruptcy Institute.

8.       I attended Texas Tech University and received my bachelor's degree from the University of Houston – Downtown. Attached as Appendix A is my Curriculum Vitae.

9.       Based on my above experience, along with my knowledge and experience in family-owned businesses, my education, training, and bankruptcy experience, I am qualified to offer the opinions contained herein.

**D.  Statement of Compensation**

10.      MACCO is being compensated for my work on this matter at my customary rate of $650 per hour. Professionals of MACCO rendering assistance are, likewise, being compensated at their normal hourly rates ranging from $100 to $575 per hour. All services and activities performed in connection with this engagement were either performed by me or under my supervision by professionals of MACCO.

11.      My compensation and that of MACCO professionals is in no way dependent on the contents of this report, the substance of any further opinions or any testimony that I may provide related to this case.

## II.      Executive Summary

12.      After review of the court pleadings, deposition transcripts, documents produced in response to the Quality Companies' subpoenas, bank records and other relevant documents, and discussions with counsel and the Subchapter V Trustee, I have determined that two significant probable causes of action exist. The first is related to numerous highly questionable cash bank

transfers. The second is the transfer of real property from the Debtor immediately prior to the filing of the Sub Chapter V case. Several other potential causes of action exist related to unpaid rents; however, I have determined they have questionable value, or the return would not exceed the likely litigation costs. In my opinion, the Liquidation Trustee may pursue on behalf of the Debtor's bankruptcy estate the above with my conclusions more particularly described below, including the investigation and evidence presented to support my opinion. However, as stated previously, my review of the Causes of Action may require a more detailed investigation by Litigation Trustee and his counsel additional inasmuch as my examination was limited to produced documents, and information.

### III.   Investigation

13.     As Examiner, I engaged both Ms. Kathy Mayle and Mr. Micah Miller, Senior Directors of MACCO Restructuring Group, LLC to assist me (collectively, the "MACCO Professionals"). Ms. Mayle has over 20 years of experience in bankruptcy and bankruptcy related financial analysis, para-professional legal experience, and similar bankruptcy litigation matters. Mr. Miller is an accomplished financial professional with both bankruptcy and non-bankruptcy accounting, financial analysis, and financial tracing expertise. During the course of my review, I or the MACCO Professionals spoke or met personally with the Debtor's counsel, the Subchapter V Trustee appointed to the case and counsel for the Quality Lender. Under my direction and supervision to determine if any fraudulent conveyance or distributions were made prior to the original petition date. MACCO professionals reviewed and analyzed the schedules and statement of financial affairs and their amendments, the Debtor's tax returns. Deposition and Rule 2004 testimony, including their exhibits were reviewed and assessed. Both Secretary of State records, real property and real property tax records related to both corporate entity and real property

5

ownership or transfers were obtained and reviewed.  My findings detail this review that support

my investigation into potential claims, causes of actions, and distributions to insiders that could

benefit the creditors of the estate.

### IV.    Potential Fraudulent Transfers

14.    I have identified the following as potential fraudulent conveyances:

- REB TX EC VENTURES, LLC's, a company owned by Richard Borstmayer ("Borstmayer") Fraudulent Conveyance;
- Questionable transfers and withdrawals from Bank of America accounts;
- First Financial Bank Payments related to the Construction Loan; and
- Loss of rents for real property of the estate utilized by family members, and potential cash transactions to family members directly or indirectly to family members.

### Borstmayer Insider Fraudulent Conveyance

15.    Michael Mobley stated that he and Richard Borstmayer ("Borstmayer") have been

friends for twenty years.[1]

Mobley 2004 Exam Page 25:

```
15        Q.  Okay.  Let's look at page 27 of 30.
16              Who is Richard Borstmayer?
17        A.  A friend of mine.
18        Q.  Why is he listed here in your schedules?
19        A.  On what?
20        Q.  He's listed right here and I'm asking you, why
21   is he listed here?  Do you owe him money?
22        A.  No.  He's a codebtor on my property, on that
23   3815 Montgomery Road.
```

---

[1] See 2004 Examination of David Michael Mobley dated April 5, 2022 (the "Mobley 2004 Exam"), Page 25, Lines 15-23. A condensed version of the 2004 Examination is attached hereto as Exhibit "A". Also see the Deposition of David Michael Mobley dated October 13, 2022, Page 46, Lines 2-10, and Page 118 Lines 7-8.  A condensed version of the Deposition is attached as Exhibit "B".

Mobley Deposition Page 46:

```
 2      Q.   Okay.  And so Mr. Borstmayer, he's the owner of
 3  Reb Texas?
 4      A.   Yeah, I guess, yes, sir.
 5      Q.   That's your understanding?
 6      A.   Yes, sir.
 7      Q.   Okay.  And he's a personal friend of yours?
 8      A.   Yes, sir.
 9      Q.   And how long has he been a friend?
10      A.   I don't know.  Probably 20 years.
```

October 13, 2022 Deposition Page 118:

```
 7  Geosouthern again either.  Richard Borstmayer is my best
 8  friend.  Because his boss won't let me --
```

16.    Borstmayer signed a Real Estate Note, Deed of Trust, Assignment of Rents, and Non homestead Affidavit as co-borrower with the Debtor and Debtor's wife for the July 6, 2021, purchase of the property located at 3815 Montgomery Road, Richmond, Texas (the "Fulshear Property").  As shown in the above excerpt from the 2004 Examination, Mobley confirms that Borstmayer is a co-debtor on the Fulshear Property with such property included on the Debtor's Fifth Amended Schedule of Assets dated July 22, 2022 [Docket No. 120]. As such, Borstmayer is co-debtor of the Fulshear Property is evidenced by the attached Deed of Trust recorded on July 6, 2021 in the Real Property Records of Wharton County, under File Number 2021113960 attached hereto as Exhibit "C."   Further evidence of potential insider dealing is the Loan Memo produced by First Financial Bank in its response to Quality Companies subpoena and the purchase of the

Fulshear Property attached hereto as Exhibit "D." Simply, *Borstmayer does not meet the non-affiliated, third-party standard and is considered for the purposes of this report an "insider"*.

17.     On or about November 9, 2012, David Michael Mobley ("Mobley" or "Debtor"), denoted as "Mike" Mobley, an individual, purchased 19.457 acres and commercial buildings, from the Board of Trustees of the El Campo Independent School District, located at 1401 MLK Blvd, El Campo, Texas (the "1401 MLK").

18.     On April 17, 2019, he entered into a loan agreement with ILS Lending LLC ("ILS") in the original principal amount of $625,000, 1401 MLK collateralized the loan (the "Note"). On October 25, 2019, Mobley re-platted 1401 MLK as 16 individual lots.

19.     On or about November 1, 2019, under the Modification and Extension Agreement, Silver Lending LLC ("Silver") became the holder of the unpaid Note with Loan Source LLC ("Loan Source") as the Note servicer. Pursuant to the Transfer and Assignment of Lien filed of record on September 14, 2020, the holder of note and lien was signed by ILS Lending LLC, transferring the $625,000 note to REB TX EC Ventures, LLC.  Borstmayer and his wife, Jennifer Borstmayer, own the membership interest in REB TX EC VENTURES, LLC ("REB TX"). Borstmayer is REB TX and REB TX is, inter alia, Borstmayer. Attached as Exhibit "E" is the Transfer and Assignment of Lien from ILS to REB TX.

20.     Mobley was not making payment and Loan Source was intent on foreclosing on 1401 MLK.  In Mobley's October 13, 2022, deposition, he stated he called a few friends to see if they would purchase the note from the servicer Loan Source LLC to stop the foreclosure. This included Borstmayer.  On Page 33, Lines 5-19 of Mobley's deposition he states:

```
 5       Q.    So he -- he bought the note and the liens from
 6   the prior lienholder?
 7       A.    They were going to the bank -- the prior
 8   lienholder was going to the courthouse to sell it on the
 9   courthouse square.
10       Q.    Right.
11       A.    And I called Richard and I said, "Hey, if I'm
12   going to have to give some stuff away, I'd rather give
13   it to somebody I know."
14             So I called him and a couple other friends
15   of mine and they all said, "Well, I don't want to fool
16   with it."
17             This is -- you know, it's right there in
18   El Campo.  Richard said "Okay.  I'll -- I'll -- I'll
19   take it."
```

21.    On January 21, 2022 (the "Bankruptcy Petition Date"), Mobley conveyed 1401 MLK to Borstmayer/Reb TX through a Warranty Deed in Lieu of Foreclosure. The date of the filing a copy of the Deed is attached hereto as Exhibit "F". On the date of the bankruptcy filing, Mobley signed the Deed, had his secretary file the Deed in the real property records of Wharton County, and hand delivered the Deed to Borstmayer's/Reb TX counsel by noon prior to the afternoon Chapter 11 filing (*See* Mobley Deposition, Page 87, Line 4 to Page 89, Line 16.)

22.    During Mobley's Deposition, his statements were vague and ambiguous as to dates or even confirmation of the actual amount owed to Borstmayer/Reb TX as the note holder. He claimed that Borstmayer/REB TX had noted a default of the note but did not act as it was agreed that no foreclosure was to occur that could ruin Mobley's credit (*See* Mobley Deposition, Page 32, Lines 1-25). Mobley further stated during his deposition that after Borstmayer/Reb TX bought the

property that no further action was taken on his part since Borstmayer/Reb TX now owned the property (*See* Mobley Deposition, Page 37, Line 4 through Page 38, Line 24).

23.     Apparently, Mobley's daughter allegedly continued to collect rents from tenants of 1401 MLK after Borstmayer/REB TX bought the note. However, Mobley continued to collect rent from the MLK 1401 tenant, Zexas Holdings LLC d/b/a First Class Children's Center ("Zexas") (*See* Mobley Deposition, Page 74, Line 7 through Page 75, Line 19) and (Mobley Deposition, Page 41, Line 18-24).  Copies of the Zexas Holdings checks are attached hereto as Exhibit "G".

24.     Borstmayer/REB TX owned the note on MLK 1401 and paid the outstanding property taxes. According to Mobley, approximately $800,000 was owed on the note and another $200,000 in taxes (*See* Mobley 2004 Exam, Page 29 Line 11 through Page 33, Line 18).  He also stated that the total amount of the debt forgiveness related to the deed in lieu of foreclosure totaled $1.25 million that is reflected on the Debtor's Fifth Amended Schedule of Assets [Docket No. 120].

25.     When questioned as to the value of the property, Mobley stated that the value of the property was between $1 million to $2 million (*See* Mobley Deposition, Page 43, Lines 8-11). However, the assessed value from the Wharton County Appraisal District values 1401 MLK in the aggregate amount of $4,084,374.  Attached hereto as Exhibit "H" are copies of the assessed values pursuant to the replatted lots from the original 2 tracts known as 1401 MLK.  These records were downloaded from the public records of Wharton County Appraisal Deed and reflect the date the liens were purchased by Borstmayer/REB TX 's and the recording of the Warranty Deed in Lieu of Foreclosure on the bankruptcy Petition Date.

26.     In September 2022, Appraisals of 1401 MLK were performed by M. L. Jones with an effective date of January 21, 2022. Although the land had been re-platted by Mobley, the

appraisals were based on the original plats and have an "As Is" value of $2,876,000. Attached hereto as Exhibit "I" are the appraisals of the two original tracts owned by Mobley.

27.     Further, it is believed that some of the tenants had expressed a desire to purchase their rented buildings but apparently backed out of it. (*See* Mobley 2004 Examination, Page 93, Line 1 through Page 94, Line 5].

```
19        A.  Yes, sir.  We tried to -- we had some people
20    that owned the buildings wanted to buy their own
21    small building.  That's the reason there are so many
22    building addresses now, because I had Mr. Gibson in
23    Houston break it all up because everybody wanted their
24    own buildings and they had money to buy them because
25    they was 4- and $500,000 per building that everybody had
```

```
1     businesses in.  And that's the reason the loan was
2     obtained from ILS, so we can fix the roof, the air
3     conditioners, replace everything on these buildings and
4     get it up to snuff, and then at the end everybody backed
5     out of it.
```

```
 6        Q.  Okay.  But did you do -- did you put the
 7   property on the market?  Did you hire a real estate
 8   agent or anything like that?
 9        A.  No, sir.
10        Q.  Did you ever obtain a broker's opinion or
11   something equivalent regarding what the value of the
12   property is, was?
13        A.  No, sir.
14        Q.  Okay.  So would it be fair to say you really
15   don't have any idea what the property is worth?
16        A.  No, sir.
```

28.     While convoluted, it is inescapable to conclude, that, using Mobley's own words, "Hey, if I'm going to have to give some stuff away, I'd rather give it to somebody I know." He did exactly that and on the very same day he filed chapter 11. Mr. Mobley conveyed real property with an estimated value ranging between $2.8 to $4 million to his 20-year friend and co-debtor on the Fulshear property thereby showing a pattern of potentially voidable, fraudulent insider transactions. The Warranty Deed in Lieu of Foreclosure itself is a fraudulent conveyance under 11 U.S.C. § 548 inasmuch as (i) the estate received less than a reasonably equivalent value in exchange for such transfer or obligation; (ii) the transfer made was for the benefit of an insider who cannot claim being an unknown third party held at arms-length in the transfer of such property; and (iii) the conveyance was made on the date of the filing to defraud the estate of value for the benefit of its creditors.

### Cobalt 302 Boat and 2008 McClain Trailer

29.     Greta Yvette Mobley, Michael Mobley's ex-wife, filed a chapter 7 bankruptcy under Case No. 22-30239, in the United States Bankruptcy Court for the Southern District of

12

Texas, Houston Division (the "Greta Bankruptcy"). Janet Northrup was appointed her Chapter 7 Trustee.

30.     This insider pattern of behavior continued through Greta's chapter 7 wherein Borstmayer asserted he bought a 50% interest for $25,000, or held a lien on, Greta's half of a 2008 Cobalt 302 boat (the "Boat") and a 2008 McClain trailer ("the Trailer") previously owned by Michael Mobley. However, the Chapter 7 Trustee did not uncover or obtain any information supporting this assertion. See Mobley Deposition, Page 76, line 8 through Page 78, Line 8. Pursuant to the Chapter 7 Trustee's Motion for Authority to Sell Motorhome, Boat, and Trailer Free and Clear of Liens, Claims, Interests and Encumbrances [Docket No. 46] and Order approving same [Docket No. 47], Mobley had no further interest in the boat as it was sold at the time Borstmayer bought the Boat and Trailer.

**Questionable Transfers and Withdrawals from Bank of America Accounts**

31.     An examination of transfers and withdrawals from two separate Bank of America accounts ("BOA Accounts") was conducted. They were:

> Account Holder: David Mobley
> Account Number Ending: 5387
>
> Account Holder: Lisa Mobley
> Account Number Ending: 8772

32.     After examination, it appears as if both the BOA Accounts experienced a number of questionable transfers both in timing and amounts. These transfers were of significant dollar amounts and were made to various unaffiliated/unfamiliar accounts held outside Bank of America. These each appear to be highly suspect in nature. Withdrawals were marked by what are considered irregular patterns, such as multiple withdrawals in small dollar amounts over a short period of

time, inconsistent and or unusual locations of withdrawal, and larger cash withdrawals without apparent justification.

33.    Attached hereto as Exhibit "J" is a detailed listing of questionable transfers and withdrawals totaling $922,006.18, either directly by Mobley or indirectly from Mobley through pre-petition transfers through his (new) wife Lisa Mobley's account to insiders, family members or their affiliates. It is believed prior to Mobley's chapter 11; Lisa Mobley's accounts were an extension of her husband's accounts. In her deposition, Lisa Mobley stated that her husband had directed her as to how the money was spent[2]. (*See* Page 28, Lines 7-11; Page 29, Lines 19-23, Page 83, Lines 7-14).  Based upon my review, my opinion is that each of these transfers could, upon further investigation, constitute fraudulent transfers that could be recovered on behalf of the estate.

### First Financial Bank, N.A.- Construction Loan

34.    As noted above, on or about July 6, 2021, Mobley, Lisa Mobley, and Borstmayer signed a Real Estate Lien Note with First Financial Bank, N.A. (the "First Financial") in the amount of $2,197,400.00 to purchase 77.557 acres (the "Fulshear property").

35.    Several issues have been identified. First, Mobley claims the Fulshear property is exempt as his homestead. However, Mobley, his wife Lisa and Borstmayer (collectively the "Fulshear Borrowers") each signed an Affidavit of Non-Homestead Exemption attached hereto as Exhibit "L".  Additionally, the Fulshear Borrowers signed an Assignment of Rents. If the Bank prepared loan documents on a residential property to be utilized as the Debtor's homestead and not for commercial purposes, why would the Bank include the Assignment of Rent and Affidavits of Non-Homestead Exemption? Further, on page 476 of the loan documents produced by the Bank, the Commercial Loan Memo/Consumer Real Estate Loan Memo reflect that the purpose of the

---

[2] See Deposition of Lisa Mobley dated October 14, 2022, attached hereto as Exhibit "K".

loan was for the purchase of agricultural land and construction of new barn and associated dirt work/etc. Both the Debtor and his wife acknowledged in their depositions that the Non-Affidavit Homestead Exemptions were signed in error. However, questions remain.

36.     Secondly, the construction loan balances appear questionable. A bid from HBI for significant improvements at the Fulshear property totaling $876,750.00, a copy of which is attached hereto as Exhibit "M."

37.     Pursuant to the Bank's Receipts and Disbursements Ledger, the original amount funded totaled $1,306,226.32 of the total $2,197,400.00 loan amount. Pursuant to the Settlement Statement, $701,400 included funds to be held for future construction draws and Mobley was entitled to draw $175,350 as borrower equity. Mobley and his wife drew down the $175,350.00 as borrower's equity on July 15, 2021. Pursuant to the bank's production of the loan history for the period of July 6, 2021, through July 20, 2022, the total amount of loan advances for the construction loan total $433,133.68, which excludes the payoff of $1,306,226.32 to the buyer at the time of closing, which should show a balance of $268,266 based upon the Loan History attached hereto as Exhibit "N". The construction stopped in March 2022 after the bankruptcy filing. (*See* Mobley Deposition, Page 57, Line 1 through Page 59, Line 4; *See* Lisa Mobley Deposition, Page 22 Line 15 – Page 24, Line 19.)

38.     Questions have arisen whether these funds were actual construction loans, equity infusions or used for some other purposes that are not reflected on the loan's settlement agreement marked as Exhibit "O."

**Fraudulent Conveyance to Insiders from Loss of Rents**

The debtor owned and then transferred 1401 MLK to Borstmayer/ REB TX. On this property, his children, Courtney Mobley, Mikayla Mobley, Cody Mobley, and David R. Mobley

15

(also known as "Mikey" Mobley) owned businesses or enterprise that operated from there. Cody Mobley and David R. Mobley own Solid Liberty Resources, LLC, Solid Liberty Rental Services, LLC and Solid Liberty Safety Services, LLC (collectively Solid Liberty). There does not appear to be a valid lease agreement. It is the Examiner's understanding that Solid Liberty has operated its businesses for more than four years. See Mobley Deposition (Page 14, Lines 16, Line 4; Page 29, Lines 1-9; Page 54, Lines 16-24). Upon information and belief, with the exception of payment of half of the annual property taxes, ostensibly in lieu of rents, it is indeterminable whether the pro rata annual property taxes were paid by Solid Liberty and/or Texas Quality Mats.  Nonpayment of rent for the use of the property for business purposes by an insider of the Debtor could be a fraudulent conveyance under 11 U.S.C. §548.

Similarly, the Examiner believes that Palms Tan & Tone LLC ("Palms") owned by Courtney Mobley, also an insider of the debtor, has not paid rents for the benefit of use of the property. Palm was formed October 17, 2013 (*See* Mobley Deposition, Page 41, Lines 18-24). There does not appear to be a valid lease agreement. Nonpayment of rent for the use of the property for business purposes by an insider of the Debtor could be a fraudulent conveyance under 11 U.S.C. §548.

39.    Pursuant to Mobley's statements under oath, rentals were collected from other tenants at 1401 MLK ranging from $3,000 to $7,150 per month. The Examiner has not been able to determine why Mobley's children would be exempt from paying rent.

40.    Pursuant to the Amended Schedule A/B [Docket No. 120, Schedule 4.1], Mobley's daughter, Cheryl Mobley has lived in the Solitaire mobile home that he purchased individually in or about 2018.  The Solitaire mobile home is scheduled at $15,000, but the assessed value by Wharton County Appraisal District shows the value at $53,846. To the best of the Examiner's

knowledge, no rent has been paid by Cheryl Mobley to Mobley as rent for property of the estate. Similarly, pursuant to the above referenced schedule, Mobley's daughter Victoria Mobley, has lived in the Clayton mobile home that he purchased for over 4 years. To the best of the Examiner's knowledge, no rent has been paid by Victoria Mobley as rent for property of the estate.

## V.   Summary of Findings

41.     It is obvious that this Small Business, Sub Chapter V, Chapter 11 case has been "*a long and* winding *road...*";however, one where there has been a consistent, clear, and convincing pattern of insider behavior that has existed between the Debtor and third parties with a blind eye turned towards the Debtor's family members. Outside a bankruptcy, this behavior is not altogether uncommon; however, we are not outside of bankruptcy whose obligations, rules and the conduct of debtors are well structured. The most obvious potential infractions are the transfer of 1401 MLK and the BOA cash transfers. These must be more thoroughly reviewed and litigated, as required, to bring financial clarity, transparency and, if successful, recoveries to creditors, anticipated under the Bankruptcy Code. Similarly, although I have identified certain potential claims against family members and their businesses, the litigation may be more costly than the resulting recoveries and thus have less weight. My review and those by MACCO professionals have been presented in tandem with both the Order appointing me and based upon available information.

DATED: May 30, 2023


Respectfully Submitted,


*/s/ Drew McManigle*
Drew McManigle
Founder and Chief Executive Officer
MACCO Restructuring Group LLC
The Pennzoil Building
700 Milam Street, Suite 1300
Houston, Texas 77002
Telephone: (410) 350-1839
Email: drew@macco.group

**Examiner**

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2023, a copy of the foregoing *Examiner's Report* has been served via the ECF system to the parties receiving ECF notice.


*/s/ Drew McManigle*
DREW MCMANIGLE

EXHIBIT B

## IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA

IN RE:                              §
                                    §          CASE NO: 22-60004
DAVID MICHAEL MOBLEY,               §
                                    §
     Debtor.                        §
                                    §
                                    §          CHAPTER 11

### MEDIATED TERM SHEET

THIS TERM SHEET DESCRIBES THE MATERIAL TERMS OF A PROPOSED COMPROMISE, ADDITIONALLY, THIS TERM SHEET IS PROTECTED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER APPLICABLE STATUTES OR DOCTRINES PROTECTING THE USE OR DISCLOSURE OF CONFIDENTIAL SETTLEMENT DISCUSSIONS, OTHER THAN AS EXPRESSED HEREIN AND AS REQUIRED TO SEEK BANKRUPTCY COURT APPROVAL OF THIS TERM SHEET.

On December 1, 2022, the following matters were mediated by the Hon. Eduardo V. Rodriguez, Chief United States Bankruptcy Judge for the Southern District of Texas in his capacity as a Judicial Mediator.: (i) *Debtor's Motion to Dismiss*, ECF No. 136; (ii) *Quality's Motion to Convert Case to Chapter 7 or, in the Alternative, to Appoint a Chapter 11 Trustee or Examiner*, ECF No. 137; (iii) *Quality Parties' Objection To Debtor's Homestead Exemption*, ECF No. 111; (iv) *Objection to Claim No 10-1 Filed by Quality Lease and Rental Holdings, LLC*, ECF No. 140; (v) *Plaintiffs' Complaint To Determine The Dischargeability Of Debt Pursuant To 11 U.S.C § 523(A), (2), (4), And (6) Against Debtor/Defendant David Michael Mobley*, Case No. 22-6024, ECF No. 1; and (vi) *Civil action 6:16-0006 Quality Lease and Rental Holdings, et al., v. Greta Yvette Mobley, et al.*

This Mediated Term Sheet is entered into by and among the parties whose signatures appear at the end of this document and resolves all disputes related to the matters referenced herein. The following sets forth the principal terms of a proposed settlement (the "*Settlement*") between David Michael Mobley, ("*Debtor*"), and Quality Lease and Rental Holdings LLC, Quality Lease Rental Service LLC, Quality Lease Service LLC ("*Quality Companies*"), and Rocaceia, LLC ("*Rocaceia*"), (collectively, the "*Parties*"), that would result in a global resolution of all issues between them.

This Term Sheet is executed to evidence the Parties' commitment to proceed in mutual good faith to (i) obtain Bankruptcy Court approval of the Settlement Terms; and (ii) negotiate and enter into any other agreements and such other documents as are necessary for implementation of the Settlement and consistent with the terms of the Settlement.

## TERMS OF SETTLEMENT

1. Parties understand and acknowledge that this Term Sheet constitutes a compromise and settlement of all disputed matters arising from and related to:

    (i)   *Debtor's Motion to Dismiss*, ECF No. 136;
    (ii)  *Quality's Motion to Convert Case to Chapter 7 or, in the Alternative, to Appoint a Chapter 11 Trustee or Examiner*, ECF No. 137
    (iii) *Quality Parties' Objection To Debtor's Homestead Exemption*, ECF No. 111;
    (iv)  *Objection to Claim No 10-1 Filed by Quality Lease and Rental Holdings, LLC,* ECF No. 140; and
    (v)   *Plaintiffs' Complaint To Determine The Dischargeability Of Debt Pursuant To 11 U.S.C § 523(A), (2), (4), And (6) Against Debtor/Defendant David Michael Mobley*, Case No. 22-6024, ECF No. 1.
    (vi)  *Civil action 6:16-0006 Quality Lease and Rental Holdings, et al., v. Greta Yvette Mobley, et al.*

2. No action taken by the Parties, either previously or in connection with this Term Sheet will be deemed or construed to be (i) an admission of the truth or falsity of any claims heretofore made; or (ii) an acknowledgement or admission by any Party or any fault or liability whatsoever to any Party or any third party.  The compromise set forth herein is subject to Bankruptcy Court approval.

3. This Term Sheet is intended to be binding and enforceable upon the Parties immediately and agree that all formal documents and all formal orders by the Bankruptcy Court will not change the material and essential terms of this Term Sheet. If the 9019 Motion is denied by the Bankruptcy Court or the order approving the 9019 Motion is later overturned, reversed, set aside, vacated, or otherwise determined to be null and/or void, the Parties agree that the Parties shall be allowed to withdraw their statements and agreements set forth in this Term Sheet and any related motions filed with the Bankruptcy Court, and may not be used against either of the Parties in any motions or at trial on the merits in this lawsuit or any other lawsuit.

4. Debtor will file a 9019 Motion to approve this compromise described in this Term Sheet by December 15, 2022.

5. The Quality Companies shall file a motion to appoint a litigation trustee on or before December 15, 2022. The Parties agree with that Brendon Singh or Deidre Brown shall be acceptable subject to such individual's agreement. If the Parties are unable to reach agreement with a proposed litigation trustee, they shall confer, and if necessary, return to additional mediation with Judge Rodriguez. The duties of the litigation trustee prior to confirmation of a plan shall consist of investigating potential claims and defining "reserved claims" in the plan to be filed. The expenses of the litigation trustee prior to the confirmation date shall be administrative expenses.

6. The Debtor shall file a plan incorporating the terms of this agreement within 120 days of approval of the Rule 9019 motion.

7. The claim of the Quality Companies shall be allowed in the amount of $40 million.

8. The Debtor and the Quality Companies shall submit an agreed judgment in Adv. No. 22-6024 providing that $2,250,000 shall be non-dischargeable subject to the provisions of this agreement within thirty days after entry of a confirmation order. The Quality Companies agree that any funds received by them pursuant to the Plan shall be credited against the non-dischargeable judgment. The Quality Companies agree to forebear from collection upon the non-dischargeable judgment until six years after entry of the confirmation order.  The non-dischargeable judgment shall not bear interest during the forbearance period described above. Following the expiration of the forbearance period, the non-dischargeable judgment shall bear interest at the federal judgment rate at that time.

9. The Plan shall require the Debtor to make payment on all Allowed administrative, priority and secured claims, including the secured claim of the IRS. In addition, Allowed unsecured creditors shall receive the following payments:

   (a) Any amounts recovered by the litigation trustee net of expenses incurred by the litigation trustee;
   (b) The sum of $300,000.00 to be paid by the Debtor at $5,000.00 per month beginning on the Effective Date; and
   (c) The sum of $1,600,000 to be paid by the Debtor and/or Texas Quality Mats, LLC according to the following schedule:  $5,000 per month for the first twenty-four months after the effective date; $10,000 per month for the next twelve months; $15,000 for the next twelve months; $20,000 for the next twelve months; and a balloon payment of $940,000 due sixty (60) months after the effective date. The Debtor shall be authorized to convey the property known as the Yard Property to Texas Quality Mats, LLC upon final payment.
   (d) The Debtor shall grant the litigation trustee a lien upon the Yard Property in the amount of $1,000,000 to secure the payments of $1,600,000 described in paragraph 9(c) above to be made under the Plan.
   (e) Texas Quality Mats, LLC shall guarantee the Debtor's obligations to unsecured creditors under the Plan.
   (f) Subject to the other provisions of the plan, the Debtor shall retain all real and personal property belonging to the Debtor or the estate (specifically not including the claims assigned to the litigation trustee).

10. The litigation trustee shall be entitled to investigate and prosecute any claims or causes of action belonging to the bankruptcy estate, except for claims or causes of action against Texas Quality Mats, LLC or Lisa Mobley. The litigation trustee shall be entitled to reasonable compensation, which shall be paid out of the funds recovered by the litigation trustee.

11. Upon entry of the agreed judgment in Adv. No. 22-6024, the Parties shall submit a joint motion to dismiss Civil Action 6:16-0006 without prejudice.

12. Within thirty (30) days of entry of a confirmation order, The Quality Companies shall withdraw their objection to the homestead exemption.

13. Within fourteen (14) days after entry of the order on the 9019 motion, the Debtor and the Quality Companies shall withdraw their respective motions to dismiss and to convert without prejudice.

14. Within fourteen (14) days after entry of the order on the 9019 motion, the Debtor shall withdraw its objection to the claim of the Quality Companies without prejudice.

15. Each Party shall bear their own attorney's fees and costs.

16. Prior to an order on the 9019 Motion being entered by the Bankruptcy Court, any disagreement as to appropriate terms, conditions or other provisions of the final Term Sheet may be submitted to the Mediator for a final decision as to inclusion or exclusion of the disputed provisions, or as to the appropriate resolution.

17. The Bankruptcy Court will retain exclusive jurisdiction related to all issues concerning performance of the Term Sheet and enforcement of any order entered approving the 9019 Motion.

18. In the event that the plan contemplated by this agreement is not confirmed by the Bankruptcy Court, either Party may declare this settlement null and void.

19. <u>Compromise of Claims</u>.  It is understood and agreed that this is a compromise of disputed claims between the Parties and that the consideration transferred herein is to compromise those disputed claims, avoid litigation, and buy peace, and that nothing contained herein shall be construed as an admission of liability by, or on behalf of, any Parties to the 9019 Motion, any and all such liability being expressly denied.

20. <u>Representations and Warranties</u>.  The Parties warrant and represent that: (a) Subject to Bankruptcy Court approval, each party has the full right and authority to enter into this Term Sheet and that each party signing the Term Sheet is authorized to do so; (b) they are the current legal and beneficial owners of all claims, liabilities, and/or causes of action released by virtue of the Term Sheet; (c) they have read and understood all aspects of the Term Sheet, and of its effects; and (d) they will have executed the Term Sheet as a free and voluntary act of their own free will without any threat, force, fraud, duress, or coercion of any kind.

21. <u>Binding Effect and Benefit</u>.  The Term Sheet shall inure to the benefit of, and shall be binding upon, the Parties and their respective heirs, executors, administrators, personal representatives, successors and assigns.

22. <u>Modification</u>.  No provision contained herein may be modified, amended or waived except by written agreement or consent signed by the Party to be bound thereby.

23. <u>Headings and Captions</u>.  Subject headings and captions are included for convenience purposes only and shall not affect the interpretation of this Term Sheet.

24. <u>Entire Agreement</u>.  The Term Sheet constitutes the entire agreement of the Parties and supersedes any and all other prior agreements, oral or written, with respect to the subject matter contained herein.

25. <u>Governing Law</u>.  The Term Sheet shall be governed by the laws of the State of Texas, and shall be construed and interpreted in accordance with its laws, notwithstanding its conflict of laws principles or any other rule, regulation or principle that would result in the application of any other state's law.

26. <u>Attorneys' Fees for Enforcement</u>.  If any Party to this Term Sheet succeeds on the merits of any legal action to enforce the Term Sheet or any order entered on a 9019 Motion, such party shall be entitled to recover reasonable attorneys' fees and court costs.

27. <u>Expenses</u>.  Each Party shall pay its own respective legal and other professional fees and other expenses incurred in connection with the matters compromised in this Term Sheet.

28. <u>Severability</u>.  In the event that any part of this Term Sheet shall be found to be illegal or in violation of public policy, or for any reason unenforceable at law, such finding shall not invalidate any other part hereof.

29. <u>Jurisdiction</u>.  Should any disagreement arise out of the interpretation or enforcement of this Term Sheet, the Bankruptcy Court for the Southern District Of Texas shall maintain jurisdiction over any disputes which arise between the Parties.

30. <u>Counterparts.</u> This Term Sheet may be executed and delivered in counterparts which together shall constitute a single instrument.

THE AGREEMENTS MADE IN THIS THIS  TERM SHEET ARE NOT SUBJECT TO REVOCATION AND ARE SIGNED BY ALL PARTIES AND THEIR ATTORNEYS, WHO WERE PRESENT AT THE TIME THAT THEIR RESPECTIVE CLIENTS SIGNED THIS TERM SHEET.

BY THE SIGNATURES BELOW, WE ACKNOWLEDGE THAT THIS MEDIATION WAS CONDUCTED IN ACCORDANCE WITH THE *TEXAS CIVIL PRACTICE AND REMEDIES CODE* AND OTHER APPLICABLE STATE LAWS, AND THAT THE JUDICIAL MEDIATOR IS NOT AN ADVOCATE FOR EITHER PARTY. WE ALSO ACKNOWLEDGE THAT WE ARE FREELY ENTERING INTO THIS AGREEMENT, AND THAT THERE WAS NO DURESS OR UNDUE INFLUENCE BY THE MEDIATOR OR ANY ATTORNEY OR PARTY DURING THIS MEDIATION.

WE FURTHER ACKNOWLEDGE THAT THE JUDICIAL MEDIATOR ASSISTED IN THE PREPARATION OF THIS RECORD OF OUR AGREEMENT AT OUR REQUEST. WE UNDERSTAND THESE TERMS AND ACKNOWLEDGE THAT WE VOLUNTARILY RESOLVED AND/OR CLARIFIED THE ISSUES IN DISPUTE AND HOLD THE JUDICIAL MEDIATOR HARMLESS FOR OUR AGREEMENT. PURSUANT TO THE *TEXAS CIVIL PRACTICE AND REMEDIES CODE*, THIS MEDIATION IS CONFIDENTIAL. ALL RECORDS, REPORTS, OR OTHER DOCUMENTS RECEIVED BY THIS JUDICIAL MEDIATOR AND ADMINISTRATIVE ENTITY (ODR) ARE CONFIDENTIAL AND SHALL BE DESTROYED BY THE JUDICIAL MEDIATOR.

THE SIGNATURES BELOW AFFIRM THIS IS A WRITTEN TERM SHEET AS CONTEMPLATED BY SECTION 154.071 OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE AND RULE 11 OF THE TEXAS RULES OF CIVIL PROCEDURE.

**IN WITNESS WHEREOF,** the Parties have caused this Term Sheet to be executed on their behalf by the signatures of their duly authorized representatives below.

**Dated:  December 1, 2022.**

_____
David Michael Mobley, individually and as authorized representative of Texas Quality Mats, LLC

_____
Stephen Wayne Sather
Barron Newburger, P.C.
7320 N Mopac Expy
Ste 400
Austin, TX 78731

_____
By: Jason Beauvais, authorized representative
Quality Lease & Rental Holdings, LLC
Quality Lease Rental Service, LLC
Quality Lease Service, LLC, and
Rocaceia LLC

_____
Walter J. Cicack
Texas Bar No. 04250535
wcicack@hcgllp.com
Jeremy M. Masten
Texas Bar No. 24083454
masten@hcgllp.com
3401 Allen Parkway, Suite 200
Houston, Texas 77019

EXHIBIT C

## LITIGATION TRUST AGREEMENT

This Litigation Trust Agreement (the "**Agreement**") is dated as of the Effective Date (defined below), and is by and between David Michael Mobley ("**Mobley**") and the Bankruptcy Estate (defined below), on the one hand, and Jourdain Poupore, the Litigation Trustee (the "**Litigation Trustee**"), on the other hand.

## RECITALS

**WHEREAS**, on January 21, 2022, David Michael Mobley filed a Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "**Bankruptcy Court**"), under Case No. 22-60004-CML (the "**Bankruptcy Case**"), and such filing created a bankruptcy estate under Section 541 of the Bankruptcy Code (the "**Bankruptcy Estate**");

**WHEREAS**, on July 31, 2023, the Debtor filed with the Bankruptcy Court the Debtor's Plan of Reorganization Dated July 31, 2023 (as confirmed, the "**Plan**");

**WHEREAS**, the Plan was confirmed by order of the Bankruptcy Court dated _____, 2023 (the "**Confirmation Order**");

**WHEREAS**, the Plan, among other things, provides for the creation of the Litigation Trust and the appointment of a litigation trustee for such trust;

**WHEREAS**, the primary purpose of the Litigation Trust is the prosecution and liquidation of the Preserved Claims (as defined in the Plan and/or Confirmation Order) and distribution of the proceeds thereof in accordance with the Plan and this Agreement, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust;

**WHEREAS**, the Plan provides for the appointment of a litigation trustee for the purposes set forth in the Plan and herein;

**WHEREAS**, the Litigation Trustee has been appointed to serve as the litigation trustee;

**WHEREAS**, the Litigation Trustee has accepted such appointment as the litigation trustee and has agreed to serve in such capacity under the terms and conditions set forth in the Plan and herein.

**NOW THEREFORE**, in consideration of the premises and mutual covenants and agreements contained herein, Mobley, the Bankruptcy Estate, and the Litigation Trustee agree as follows:

## ARTICLE I
## DEFINITIONS

Section 1.1    *Certain Terms Defined*.  As used herein, defined terms not otherwise defined in this Agreement shall have the meaning ascribed to them in the Plan and/or Confirmation Order, and the following terms have the respective meaning specified below:

"**Final Determination**" shall mean a settlement, compromise, or other agreement with the relevant governmental authority, whether contained in an IRS Form 870 or other comparable form, or otherwise, or such procedurally later event, such as a closing agreement with the relevant governmental authority, an agreement contained in IRS Form 870-AD or other comparable form, an agreement that constitutes a "determination" under section 1313(a)(4) of the Code, or a deficiency notice with respect to which the period for filing a petition with the Tax Court or the relevant governmental authority that is not subject to appeal or as to which the time for appeal has expired.

"**Indemnified Parties**" shall mean, individually and collectively, the Litigation Trustee, and to the extent applicable, his companies, affiliates, attorneys, partners, officers, directors, members, employees, consultants, disbursing agents, or duly designated agents or representatives.

"**IRS**" shall mean the United States Internal Revenue Service.

"**Lien**" means, with respect to any Person, any interest granted by such Person (or any interest imposed by law) in any real or personal property, asset or other right owned or being purchased or acquired by such Person which secures payment or performance of any obligation and shall include any mortgage, lien, encumbrance, charge or other security interest of any kind, whether arising by contract, as a matter of law, by judicial process or otherwise.

"**Person**" means any natural person, corporation, partnership, trust, limited liability company, association, governmental authority or unit, or any other entity, whether acting in an individual, fiduciary or other capacity.

"**Revenue Procedure**" means Revenue Procedure 94-45, 1994-2 C.B. 684 (July 11, 1994).

"**Subsidiary**" means, as to any Person, a corporation, partnership, limited liability company or other entity of which shares of stock or other ownership interests having ordinary voting power to elect a majority of the board of directors or other managers of such corporation, partnership, limited liability company, or other entity are at the time owned, or the management of which is otherwise controlled, directly or indirectly through one or more intermediaries, or both, by such Person.

"**Tax Code**" shall mean the Internal Revenue Code of 1986, as amended.

"**Treasury Regulations**" shall mean the Treasury Department Regulations promulgated under the Tax Code.

"**Trust Assets**" shall mean the Preserved Claims and all proceeds thereon, vested in the Litigation Trust free and clear of Liens, charges, claims, encumbrances, and other interests.

## ARTICLE II
## CREATION/TERMINATION OF LITIGATION TRUST

Section 2.1     *Creation of the Litigation Trust.*  Pursuant to the Plan, the Litigation Trust is hereby constituted and created as a liquidating trust, in accordance with the tax treatment described in **Section 5.1** hereof, and in accordance with the Bankruptcy Code, for the primary purposes of prosecuting and liquidating the Preserved Claims and distributing the proceeds thereof

for the benefit of the Litigation Trust Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan and/or Confirmation Order, with no objective to engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, such liquidating purpose (referred to herein as the "**Litigation Trust**").

Section 2.2     *Appointment and Acceptance of the Litigation Trustee*.   Jourdain Poupore is appointed as the Litigation Trustee, to act and serve as the Litigation Trustee in accordance with this Agreement and the Plan and/or Confirmation Order for the duration of the Litigation Trust, subject to death, resignation or removal.   Jourdain Poupore hereby accepts the appointment as the Litigation Trustee, and, in such capacity, agrees to hold the Trust Assets, in trust, in accordance with the terms of this Agreement and to administer the Litigation Trust pursuant to the terms and conditions of this Agreement and the Plan and/or Confirmation Order.

Section 2.3     *Name of the Trust*.   The Litigation Trust established pursuant to this Agreement shall bear the name "Mobley Litigation Trust." In connection with the exercise of Litigation Trustee's powers under this Agreement, the Litigation Trustee may use this name or such variation thereof as the Litigation Trustee, in the Litigation Trustee's discretion, may determine to be appropriate.

Section 2.4     *Transfer of Assets to the Trust*.   Pursuant to the Plan and the Confirmation Order as of the Effective Date, the Debtor and the Bankruptcy Estate hereby unconditionally and irrevocably transfer, assign, and deliver and agree in the future to transfer, assign, and deliver (as applicable) to the Litigation Trustee all of their respective rights, title, and interests from time to time in and to (i) the Trust Assets free and clear of all claims, Liens, encumbrances, charges, and other interests and (ii) all files, instruments, papers, information, and other books and records of the Debtor and/or the Bankruptcy Estate related to the Trust Assets, in each case to be held by the Litigation Trustee, to be administered for the benefit of the Litigation Trust Beneficiaries.  To the extent any Trust Asset cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable nonbankruptcy law that is not superseded or preempted by Section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Trust Asset shall be deemed to have been retained by the Debtor and/or the Bankruptcy Estate and the Litigation Trustee shall be deemed to have been designated as a representative of Debtor and/or the Bankruptcy Estate pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Trust Asset on behalf of such Debtor and/or the Bankruptcy Estate; *provided*, that, the parties hereto shall continue to use commercially reasonable efforts at the cost and expense of the Litigation Trust to transfer any such Trust Asset to the Litigation Trust and in the event that any such Trust Asset cannot be transferred to the Litigation Trust prior to the date which is six (6) months after the Effective Date, the parties shall cooperate to reach a mutually agreeable, commercially reasonable arrangement designed to provide the Litigation Trust with the benefits of such Trust Asset that would have been obtained had such Trust Asset been transferred to the Litigation Trust on the Effective Date.  From and after the Effective Date, any cash, proceeds, or other property received by the Litigation Trust from third parties arising from or related to the prosecution, settlement, or compromise of the Preserved Claims shall constitute Trust Assets for purposes of distributions under this Agreement.  Upon the transfer of the Trust Assets to the Litigation Trust hereunder, the Litigation Trust shall succeed to all of the Debtor's and the Bankruptcy Estate's rights, title, and interests in and to the Trust Assets, and the Debtor and the Bankruptcy Estate will have no further interest in or with respect to the Trust Assets or the Litigation Trust, aside from, as applicable, any obligations imposed under **Section 10.1** hereof.

Section 2.5    *Fiscal Year*.  The fiscal year of the Litigation Trust shall be the calendar year.

Section 2.6    *Termination of Litigation Trust*.  The Litigation Trust shall automatically terminate upon the date of the final distribution of the Trust Assets to the Litigation Trust Beneficiaries pursuant to the Plan, the Confirmation Order, and this Agreement; provided, however, that the term of the Litigation Trust shall not be unduly prolonged, within the meaning of the Revenue Procedure, by the Litigation Trustee and, in any event, the Litigation Trust shall be dissolved no later than five (5) years from the Effective Date unless extended as provided herein.  Notwithstanding the foregoing, multiple fixed-term extensions can be obtained so long as Bankruptcy Court approval is obtained (upon a finding that the extension is necessary to the liquidating purpose of the Litigation Trust) within six (6) months before the expiration of the term of the Litigation Trust and each extended term, provided that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust within the meaning of Section 301.7701-4(d) of the Treasury Regulations for federal income tax purposes.  After the termination of the Litigation Trust, the Litigation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.  Notwithstanding the foregoing, after the termination of the Litigation Trust, the Litigation Trustee shall have the power, authority, and discretion herein conferred solely for the purpose of winding up the affairs of the Litigation Trust, including to file any final tax returns on behalf of the Litigation Trust.

## ARTICLE III
## BENEFICIARIES

Section 3.1    *Litigation Trust Beneficiaries*.  Holders of Allowed Unsecured Claims (class 11) (collectively, the "**Litigation Trust Beneficiaries**"), as provided for in Section 4.11 of the Plan, shall be the beneficiaries of the Litigation Trust.

Section 3.2    *Interests of Litigation Trust Beneficiaries*.  The Litigation Trust Beneficiaries shall be entitled to undivided beneficial interest in the Trust Assets in accordance with Section 4.11 of the Plan (the "**Litigation Trust Interests**").  The ownership of a Litigation Trust Interest hereunder shall not entitle any Litigation Trust Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of Trust Assets or to require an accounting.

Section 3.3    *No Suits by Litigation Trust Beneficiaries*.  No Litigation Trust Beneficiary shall have any right by virtue of any provision of this Agreement to institute any action or proceeding, at law or in equity, against any Person with respect to the Trust Assets; provided, however, that a Litigation Trust Beneficiary shall be permitted to institute in the Bankruptcy Court an action or proceeding, in law or in equity, against the Litigation Trustee solely with respect to enforcing its right to a distribution under this Agreement upon demonstrating its compliance with its obligations under this Agreement, and the Litigation Trustee shall have no liability to any Litigation Trust Beneficiary except for acts or omissions arising from gross negligence, intentional misconduct, willful misconduct, or actual fraud.

Section 3.4    *Securities Law Registration*.  It is intended that the Litigation Trust Interests shall not constitute "securities".  To the extent the Litigation Trust Interests are deemed to be "securities," they shall be exempt, pursuant to Section 1145 of the Bankruptcy Code, from

registration under the Securities Act of 1933, as amended (the "**Securities Act**"), and any applicable state and local laws requiring registration of securities. If the Litigation Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with registration and reporting requirements of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), or the Investment Company Act of 1940, as amended (the "**Investment Company Act**"), then the Litigation Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and file periodic reports with the Securities and Exchange Commission (the "**SEC**"). Notwithstanding the foregoing procedure, nothing herein shall be deemed to preclude the Litigation Trustee from amending this Litigation Trust Agreement to make such changes as are deemed necessary or appropriate by the Litigation Trustee, with the advice of counsel, to ensure that the Litigation Trust is not subject to the registration or reporting requirements of the Exchange Act or the Investment Company Act.

Section 3.5    *Notice of Change of Address; Undeliverable Property*. Each Litigation Trust Beneficiary shall be responsible for providing the Litigation Trustee with written notice of any change in address. The Litigation Trustee is not obligated to make any effort to determine the correct address of a Litigation Trust Beneficiary.

(a)    Subject to Bankruptcy Rule 9010, all distributions under the Plan and this Agreement shall be made to the holders of Litigation Trust Interests at the address of such holder as listed in the bankruptcy schedules and Proof of Claims filed in the Bankruptcy Case, unless the Litigation Trustee has been notified in writing of a change of address. In the event that any distribution to any such holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Litigation Trustee has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such distribution shall be made to such holder without interest. Undeliverable distributions shall remain in the possession of the Litigation Trustee until the earlier of (i) such time as the relevant distribution becomes deliverable and (ii) the time period specified in subsection (b) hereof.

(b)    Subject to any extensions as determined by the Litigation Trustee, all distributions made pursuant to this Agreement that are unclaimed for a period of ninety (90) days after distribution thereof shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code and revested in the Litigation Trust and distributed to the other Litigation Trust Beneficiaries. The Litigation Trustee shall have no further obligation to make any distribution to the holder of such Litigation Trust Interest; provided, however, that the holder of such Litigation Trust Interest may receive future distributions by contacting the Litigation Trustee at some point prior to the final distribution from the Litigation Trust.

## ARTICLE IV
## PURSUING THE LITIGATION

Section 4.1    *Filing of Lawsuits*. The Litigation Trustee shall be fully authorized and empowered to pursue the Preserved Claims and file any lawsuit or other appropriate legal proceeding in any court of competent jurisdiction (including the Bankruptcy Court), as reasonably determined by the Litigation Trustee to be advisable, and to prosecute any and all of the Preserved Claims to settlement, compromise, or final judgment, all within the discretion of the Litigation Trustee in accordance with the Plan and this Agreement. The Litigation Trustee shall be authorized to pursue litigation in the name of the Litigation Trust, the Debtor, and/or the Bankruptcy Estate,

as the Litigation Trustee deems appropriate.  The Litigation Trustee shall be fully authorized to engage counsel to aid in the pursuit of any of the Preserved Claims pursuant to the terms and conditions deemed advisable by the Litigation Trustee and without need of approval of the Bankruptcy Court or the Litigation Trust Beneficiaries.

Section 4.2    *Litigation Trust Expenses*.  "**Litigation Trust Expenses**" shall mean all reasonable and documented costs, expenses, and obligations incurred in connection with administering the Litigation Trust and liquidating, monetizing, and distributing the Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, including the following: (a) all claims, fees, expenses, charges, liabilities, and obligations of the Litigation Trust as contemplated by this Agreement and as required by law; (b) compensation to, and reimbursement of expenses incurred (or to be incurred) by, the Litigation Trustee, and all professionals retained by the Litigation Trust in connection with the performance of the duties of such parties under this Agreement, including, without limitation, the reasonable fees, disbursements, advances and related expenses of the Litigation Trustee's agents, advisors, professionals, retained legal counsel, consultants, and experts; and (c) all claims, fees, expenses, charges, liabilities, and obligations of the Litigation Trust as set forth in this Agreement for the benefit of an Indemnified Party.

Section 4.3    *Compensation and Reimbursement*.

(a)    The Litigation Trustee shall be entitled to payment and reimbursement for his reasonable fees and expenses incurred in the performance of his duties as Litigation Trustee, and such fees and expenses shall be considered Litigation Trust Expenses.

(b)    On and after the Effective Date, the reasonable and documented fees and expenses of any professionals retained by the Litigation Trustee in connection with the prosecution of the Preserved Claims shall be (i) deemed a Litigation Trust Expense, and (ii) paid by the Litigation Trust in accordance with any applicable retention agreements without any requirement of approval by the Bankruptcy Court of the retention, fees, or expenses payable to such professionals.

**ARTICLE V**
**TAX MATTERS**

Section 5.1    *Tax Treatment*.  The Litigation Trust is established for the sole purpose of liquidating, monetizing, and distributing the Trust Assets, in accordance with Treasury Regulation Section 301.7701-4(d) and the Revenue Procedure, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust.  The Litigation Trust is intended to qualify as a liquidating trust for U.S. federal income tax purposes.  The Debtor, the Bankruptcy Estate, the Litigation Trustee, and all holders of Litigation Trust Interests must treat the transfer to the Litigation Trust of the portion of the Trust Assets attributable to such Litigation Trust Beneficiaries as a transfer of such assets directly to such Litigation Trust Beneficiaries followed by a contribution of the Trust Assets to the Litigation Trust.  Consistent therewith, the Debtor, the Bankruptcy Estate, the Litigation Trustee, and all holders of Litigation Trust Interests must treat the Litigation Trust as a grantor trust for federal income tax purposes.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests one, or the

receipt of an adverse determination by the IRS upon audit if not contested by the Litigation Trustee), the Litigation Trustee shall, unless otherwise required by a Final Determination, (a) treat the funds and other property held by the Litigation Trustee as held in a single grantor trust for federal income tax purposes in accordance with the trust provisions of the Tax Code (sections 671 et seq.), and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  The Litigation Trustee shall obtain from the IRS an employer identification number for the Litigation Trust.

Section 5.2    *Tax Identification Numbers*.   The Litigation Trustee may require any Litigation Trust Beneficiary to furnish to the Litigation Trustee necessary information for tax and reporting purposes, including such Litigation Trust Beneficiary's employer or taxpayer identification number as assigned by the IRS or the Social Security Administration, as the case may be, and the Litigation Trustee may condition any distribution to any Litigation Trust Beneficiary upon the receipt of such information.

Section 5.3    *Withholding Taxes*.   Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder.   All Litigation Trust Beneficiaries shall be required to provide any information necessary to effect the withholding of such taxes.

## ARTICLE VI
## POWERS OF AND LIMITATIONS ON THE LITIGATION TRUSTEE

Section 6.1    *Powers of the Litigation Trustee*.   In connection with the administration of the Litigation Trust, the Litigation Trustee is authorized to perform any and all acts necessary and desirable to accomplish the purposes of the Litigation Trust.  On the Effective Date, the Litigation Trustee shall succeed to all rights of the Debtor and the Bankruptcy Estate with respect to the Trust Assets necessary to protect, conserve, and liquidate all the Trust Assets.   Without limiting, but subject to, the foregoing, the Litigation Trustee shall be expressly authorized to:

(a)    prosecute, collect, compromise, settle, or abandon any Preserved Claims without further approval of or application to the Bankruptcy Court (except to the extent required by this Agreement, the Plan, or the Confirmation Order);

(b)    appear and have standing in the Bankruptcy Court (or any other court having jurisdiction over the Trust Assets) to be heard with regard to the Preserved Claims and other matters that may affect or relate to the Trust Assets;

(c)    act on behalf of the Debtor, the Bankruptcy Estate, or the Litigation Trust in prosecuting, compromising, settling, or defending any Preserved Claims or rights (whether legal or equitable) pertaining to the Trust Assets or the Litigation Trust that exist as of the Effective Date or could arise at any time thereafter, whether under the Bankruptcy Code or other applicable law, including in all adversary proceedings and contested matters then pending (whether or not originally asserted in the name of the Debtor, the Bankruptcy Estate, or the Litigation Trust, or any other authorized Estate representative), or that can be commenced in the Bankruptcy Court and in all actions and proceedings that may be pending (whether or not originally asserted in the name of the Debtor, the Bankruptcy Estate, or the Litigation Trust, or any other authorized Estate representative), or that can be commenced elsewhere;

7

(d)      borrow money necessary to pay Litigation Trust Expenses and/or prosecute the Preserved Claims as determined in the Litigation Trustee's discretion on a non-recourse basis except to the proceeds of the Litigation Trust Assets;

(e)      receive, manage, supervise, and protect the Trust Assets, including complying with obligations incurred in connection therewith;

(f)      open and maintain bank accounts on behalf of, and in the name of, the Litigation Trust, and take all actions with respect to such bank accounts for the purposes of administering the Litigation Trust, including (but not limited to) drawing checks and drafts thereon on the sole signature of the Litigation Trustee, and terminating such accounts as the Litigation Trustee deems appropriate;

(g)      liquidate and monetize the Trust Assets;

(h)      execute any documents and substantive court filings, and take any other actions related to, or in connection with, the liquidation of the Trust Assets and the exercise of the Litigation Trustee's powers granted by the Plan and this Agreement, including, but not limited to, the exercise of the Debtor's or the Bankruptcy Estate's rights to conduct discovery and oral examination of any Person under Rule 2004 of the Federal Rules of Bankruptcy Procedure;

(i)      solely in its capacity as the Litigation Trustee, hold legal title to any and all rights of the Litigation Trust Beneficiaries in or arising from the Trust Assets;

(j)      protect and enforce the rights to the Trust Assets vested in the Litigation Trust by this Agreement by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium, or similar law and general principles of equity;

(k)      make distributions to the Litigation Trust Beneficiaries on account of their Litigation Trust Interests or such other distributions as may be authorized by order of the Bankruptcy Court, this Agreement, or the Plan;

(l)      file, if necessary, any and all tax returns with respect to the Litigation Trust, pay taxes, if any, properly payable by the Litigation Trust, and make distributions net of such taxes;

(m)      oversee compliance with the Litigation Trust's accounting, finance, and reporting obligations;

(n)      make any and all necessary filings in accordance with any applicable law, statute, or regulation;

(o)      determine and satisfy any and all uncontested liabilities created, incurred, or assumed by the Litigation Trust;

(p)      pay any and all expenses and make all other payments in connection with the Litigation Trust without further order of the Bankruptcy Court;

(q)     retain and pay, without application to the Bankruptcy Court or any other court of competent jurisdiction, professionals retained by the Litigation Trust, including any attorneys retained in connection with the pursuit or settlement of the Preserved Claims;

(r)     maintain money received by the Litigation Trust or otherwise held by the Litigation Trust;

(s)     in the event that the Litigation Trustee determines that the Litigation Trust Beneficiaries or the Litigation Trust may, will, or have become subject to adverse tax consequences, take such actions that will, or are reasonably intended to, alleviate such adverse tax consequences;

(t)     execute and deliver all documents and take all actions that are not inconsistent with the provisions of the Plan, the Confirmation Order, and this Agreement that the Litigation Trustee reasonably deems necessary to consummate the Plan or desirable to further the purposes of the Litigation Trust;

(u)     use, sell at public or private sale, assign, transfer, abandon or otherwise dispose of the Trust Assets or convert the same to cash without Bankruptcy Court approval, but consistent with the provisions herein; and

(v)     exercise any and all other powers granted to the Litigation Trustee under the Plan or Confirmation Order.

Section 6.2    *Limitations on Litigation Trustee*. The Litigation Trustee shall not at any time, on behalf of the Litigation Trust or the Litigation Trust Beneficiaries, (i) enter into or engage in any trade or business, (ii) take any actions that are not related, directly or indirectly, to the purposes of this Agreement and the Litigation Trust or the administration or implementation of the terms hereof, or that would cause the Litigation Trust to be treated as other than a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations for federal income tax purposes, or (iii) other than as reasonably necessary to maintain the value of the Trust Assets and to further the liquidating purpose of the Litigation Trust, invest or cause to be invested any Trust Assets in assets other than "demand and time deposits" within the meaning of the Revenue Procedure.

Section 6.3    *Maintenance of Litigation Trust Monies*.  The Litigation Trustee shall maintain any funds held by the Litigation Trustee pending the distribution of such funds pursuant to this Agreement in an account maintained by a federally chartered financial institution.  The Litigation Trustee shall not commingle any of the Trust Assets with its own property or the property of any other Person.

Section 6.4    *Non-Cash Trust Assets*.  To the extent Trust Assets consist of property other than cash and Preserved Claims, the Litigation Trustee shall, as quickly as possible, reduce such Trust Assets to cash.  The Litigation Trustee shall determine the preferred timing of reducing such Trust Assets to cash.

Section 6.5 *Application of Trust Assets*. The Litigation Trustee shall apply all proceeds of the Trust Assets as follows:

> *First*: to pay, in full, all Litigation Trust Expenses;

> *Second*: to pay Litigation Trust Beneficiaries on account of their Litigation Trust Interests their Pro Rata share of the Class 11 distributions in accordance with the Plan.

Section 6.6 *Distributions*. The Litigation Trust shall, to the extent required to not adversely affect the status of the Litigation Trust as a liquidating trust within the meaning of Section 301.7701-4(d) of the Treasury Regulations for federal income tax purposes, distribute at least annually to the Litigation Trust Beneficiaries its net income plus all net proceeds from the monetization of Trust Assets, except that (i) the Litigation Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the Trust Assets or to meet claims and contingent liabilities, including without limitation establishing reserves to pay anticipated Litigation Trust Expenses; and (ii) the Litigation Trustee shall exercise its business judgment in determining whether sufficient proceeds are available for distribution to incur the costs of a distribution. Upon the settlement, conclusion of litigation, or collection of proceeds of the Preserved Claims, the Litigation Trustee shall make a final distribution to Litigation Trust Beneficiaries on account of their Litigation Trust Interests in accordance with the terms of the Plan, Confirmation Order, and this Agreement. Prior to making any distributions to the Litigation Trust Beneficiaries, the Litigation Trustee may retain such amounts (i) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Trust Assets during the liquidation, (ii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Litigation Trust or in respect of the Trust Assets), and (iii) to satisfy other liabilities incurred by the Litigation Trust in accordance with the Plan and this Agreement.

Section 6.7 *Books and Records*. The Litigation Trustee shall maintain, in respect of the Litigation Trust and the Litigation Trust Beneficiaries, books and records relating to the assets and the income of the Litigation Trust and the payment of expenses of the Litigation Trust, in accordance with, and for the purposes of complying with, the provisions of **Article VI** hereof. Any books and records determined by the Litigation Trustee, in the Litigation Trustee's sole discretion, not to be reasonably necessary for administering the Litigation Trust or for the Litigation Trustee's compliance with this Agreement may, to the extent not prohibited by applicable law, be abandoned or destroyed.

Section 6.8 *Cash Payments*. All payments required to be made by the Litigation Trustee under the Plan and this Agreement shall be made in cash and may be made by either check or wire transfer, at the sole discretion of the Litigation Trustee, and, if in check form, drawn on a domestic bank selected by the Litigation Trustee.

Section 6.9 *Settlement of Preserved Claims*. The Litigation Trustee shall be authorized to settle any of the Preserved Claims without approval of the Bankruptcy Court; provided, however, the Litigation Trustee may seek approval of the Bankruptcy Court with respect to any settlement as he deems advisable in his sole discretion.

Section 6.10 *Information Audible*. The Litigation Trustee shall provide readily and publicly available information to any Litigation Trust Beneficiary requesting such information

within twenty (20) days of the Litigation Trustee's receipt of a written request by a Litigation Trust Beneficiary.

## ARTICLE VII
## THIRD PARTY RIGHTS AND LIMITATIONS OF LIABILITY

Section 7.1    *Parties Dealing with the Litigation Trustee*.   In the absence of actual knowledge to the contrary, any Person dealing with the Litigation Trust or the Litigation Trustee shall be entitled to rely on the authority of the Litigation Trustee or any of the Litigation Trustee's agents to act in connection with the Trust Assets.   There is no obligation of any Person dealing with the Litigation Trustee to inquire into the validity or expediency or propriety of any transaction by the Litigation Trustee or any agent of the Litigation Trustee.

Section 7.2    *Limitation of Liability*.   In exercising the rights granted herein, the Litigation Trustee shall exercise the Litigation Trustee's best judgment, to the end that the affairs of the Litigation Trust shall be properly managed and the interests of all of the Litigation Trust Beneficiaries safeguarded. However, notwithstanding anything herein to the contrary, neither the Litigation Trustee, nor his firms, companies, affiliates, partners, officers, directors, members, employees, disbursing agents, or duly designated agents or representatives, nor any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement or the Plan, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, intentional misconduct or willful misconduct that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust.

Section 7.3    *No Liability for Acts of Other Persons*.   None of the Persons identified in the immediately preceding **Section 7.2** shall be liable for the act or omission of any other Person identified in that section.

Section 7.4    *No Liability for Acts of Predecessors*.   No successor Litigation Trustee shall be in any way responsible for the acts or omissions of any Litigation Trustee in office prior to the date on which such successor becomes the Litigation Trustee, unless a successor Litigation Trustee expressly assumes such responsibility.

Section 7.5    *No Liability for Good Faith Error of Judgment*.   The Litigation Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Litigation Trustee, was grossly negligent in ascertaining the pertinent facts.

Section 7.6    *Reliance by Litigation Trustee on Documents and Advice of Counsel or Other Persons*.   Except as otherwise provided herein, the Litigation Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by the Litigation Trustee, to be genuine and to have been signed or presented by the proper party or parties.   The Litigation Trustee also may engage and consult with its legal counsel and other agents and advisors, and the Litigation Trustee shall not be liable for any action taken, omitted, or suffered in reliance upon the advice of

such counsel, agents, or advisors regardless of whether such advice or opinions are provided in writing.

Section 7.7     *No Liability for Acts Approved by Bankruptcy Court*.   The Litigation Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust Assets and the Preserved Claims required to be administered by the Litigation Trust.  The Litigation Trustee shall not be liable for any act that has been approved by the Bankruptcy Court, and all such actions shall be deemed not to constitute fraud, gross negligence, intentional misconduct or willful misconduct.

Section 7.8     *No Personal Obligation for Trust Liabilities*.   Persons dealing with the Litigation Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Litigation Trustee to any such Person in carrying out the terms of this Agreement, and the Litigation Trustee shall have no personal, individual obligation to satisfy any such liability.

Section 7.9     *Indemnification*.   The Indemnified Parties shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Litigation Trust from time to time and receive reimbursement from and against any and all liabilities, losses, claims, costs, expenses, or damages of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Litigation Trust or the Plan or the discharge of their duties under the Plan or this Agreement, including, without limitation, the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is finally determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the fraud, gross negligence, intentional misconduct or willful misconduct of the Indemnified Party asserting this provision.  If any Indemnified Party becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with the Plan, this Agreement, or the affairs of the Litigation Trust, for which an indemnification obligation could arise, such Indemnified Party shall promptly notify the Litigation Trustee.

### ARTICLE VIII
### LITIGATION TRUSTEE AND SUCCESSORS

Section 8.1     *Resignation or Removal*.   The Litigation Trustee may resign and be discharged by giving at least 60 days' prior written notice thereof to the Litigation Trust Beneficiaries and the Litigation Trustee's filing of a Notice of Resignation with the Bankruptcy Court.  Such resignation shall become effective on the later to occur of (i) the date specified in such written notice and (ii) the effective date of the appointment of a successor Litigation Trustee in accordance with **Section 8.3** hereof and such successor's acceptance of such appointment.

Section 8.2     *Removal*.  After the payment of all outstanding reasonable and documented fees and expenses of the Litigation Trustee through such date, the Litigation Trustee may be removed, with cause, by application of a Litigation Trust Beneficiary with the Bankruptcy Court

after notice and hearing.  The Bankruptcy Court will remove the Litigation Trustee only upon good cause shown for such removal.  Such removal shall become effective on the effective date of the appointment of a successor Litigation Trustee in accordance with **Section 8.3** and such successor's acceptance of such appointment.

Section 8.3   *Appointment of Successor*.  In the event of the Litigation Trustee's death, incapacitation, resignation or removal, his successor shall be appointed by the Bankruptcy Court after notice to the Debtor and the Litigation Trust Beneficiaries and hearing.

Section 8.4   *Acceptance of Appointment by Successor Litigation Trustee*.  The death, incapacitation, resignation, or removal of the Litigation Trustee shall not operate to terminate the Litigation Trust created by this Agreement or to revoke any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Litigation Trustee. Any successor Litigation Trustee appointed hereunder shall execute an instrument accepting such successor Litigation Trustee's appointment and shall deliver one counterpart thereof to the Bankruptcy Court for filing, and, in case of the Litigation Trustee's resignation or removal, to the retiring Litigation Trustee.  Thereupon, such successor Litigation Trustee shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion, and privileges of the predecessor Litigation Trustee in the Litigation Trust with like effect as if originally named Litigation Trustee and shall be deemed appointed pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code to liquidate, monetize, and distribute the Trust Assets for the benefit of the Litigation Trust Beneficiaries.

## ARTICLE IX
## MISCELLANEOUS PROVISIONS

Section 10.1   *Mobley's Further Assurances*.  Mobley will, at the cost and expense of the Litigation Trust, take such actions and execute such documents as are reasonably requested by the Litigation Trustee to implement the provisions of this Agreement including, without limitation, cooperating with the Litigation Trustee's reasonable requests for books, records, and both written and oral information but excluding any obligation to assist, participate, or otherwise be involved in investigating, preparing, or pursuing any Preserved Claim.

Section 10.2   *Construction*.  This Agreement and the Litigation Trust created hereby shall be governed by and construed in accordance with the laws of the State of Texas without giving effect to choice of law principles.  The Litigation Trustee's interpretation of the provisions of this Agreement and the provisions of the Plan shall be deemed conclusive in the absence of a contrary interpretation of a court of competent jurisdiction.

Section 10.3   *Jurisdiction*.  The parties agree that the Bankruptcy Court shall have exclusive jurisdiction to determine all controversies and disputes arising under or in connection with this Agreement.

Section 10.4   *Severability*.  In the event any provision of this Agreement shall be determined by Final Order of a court of proper jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

Section 10.5   *Notices*.  Any notice, consent, approval or other communication required or permitted to be given in accordance with this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by facsimile or mailed by first class mail to the following address (it being understood that any party may change its address by similar written notice to the other party):

> (i)      if to the Trustee:
>
> Jourdain Poupore
> POUPORE LAW FIRM PLLC
> 3233 W. Dallas St., Ste. 313
> Houston, TX 77019
> Email: jourdain@poupore.law
>
> (ii)     if to Mobley:
>
> c/o Stephen W. Sather
> BARRON & NEWBURGER, P.C.
> 7320 N. Mopac Expressway, Ste. 400
> Austin, TX 78731
> Email: ssather@bn-lawyers.com

Section 10.6   *Entire Agreement*.  This Agreement (including the recitals hereof and, to the extent applicable, the Plan, and the Confirmation Order) constitutes the entire agreement by and among the parties with respect to the subject matter hereof, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan, and in the Confirmation Order.  This Agreement (together with the Plan and the Confirmation Order) supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, if any, of the parties hereto relating to any transaction contemplated hereunder.  Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any Person other than the parties hereto and the Litigation Trust Beneficiaries any rights or remedies under or by reason of this Agreement.  This Agreement shall be binding on the parties hereto and their successors.

Section 10.7   *Relationship Created*.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

Section 10.8   *Amendment*.  This Agreement may from time to time be amended, supplemented, or modified by the Trustee with the approval of the Bankruptcy Court, provided that Mobley has been provided with reasonable notice of any proposed amendment to their rights or obligations under this Agreement, together with copies of any Bankruptcy Court correspondence, filings or applications in relation to any such amendment.

Section 10.9   *Headings*.  The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

Section 10.10 *Counterparts*.  This Agreement may be executed in facsimile and in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

Section 10.11 *No Bond*.  The Litigation Trustee shall serve without a bond.

Section 10.12 *Relationship to the Plan*.  The principal purpose of this Agreement is to aid in the implementation of the Plan and therefore this Agreement incorporates the provisions of the Plan and the Confirmation Order.  To that end, the Litigation Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and the Confirmation Order, and to seek any orders from the Bankruptcy Court in furtherance of the implementation of the Plan and this Agreement.  If any provisions of this Agreement are found to be inconsistent with provisions of the Plan, the provisions of the Plan shall control, and the provisions of the Confirmation Order shall control over any inconsistent provision in the Plan.

Section 10.13 *Effective Date*.  This Agreement shall become effective as of the date it is signed by the Litigation Trustee.

IN WITNESS WHEREOF, the undersigned have caused this instrument to be executed as of the date written below.

**David Michael Mobley, individually as Debtor and as representative of the David Michael Mobley Bankruptcy Estate**

By: _____
    David Michael Mobley

Date: _____

**Litigation Trustee**

By: _____
    Jourdain Poupore

**Effective Date: _____**

15

Prepared by the State Bar of Texas for use by lawyers only.

© 1999, 2000, 2002, 2004, 2006, 2009 by the State Bar of Texas    Revised 06/09

# COMMERCIAL DEED OF TRUST

**Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed for record in the public records: your Social Security number or your driver's license number.**

Date:

Grantor:

Grantor's Mailing Address (including county):

Trustee:

Trustee's Mailing Address (including county):

Lender:

Lender's Mailing Address (including county):

Obligation

    Note(s)

        Date:

        Original principal amount:

        Borrower:

        Lender:

        Maturity date:

    Other Debt:

Property (including any improvements):

Prior Lien(s) (including recording information):

Other Exceptions to Conveyance and Warranty:

      For value received and to secure payment of the Obligation, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty. On payment of the Obligation and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

## Clauses and Covenants

**A.   Grantor's Obligations**

    Grantor agrees to—

   1.   keep the Property in good repair and condition;

   2.   pay all taxes and assessments on the Property before delinquency;

   3.   defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

   4.   maintain all insurance coverages with respect to the Property, revenues generated by the Property, and operations on the Property that Lender reasonably requires ("Required Insurance Coverages"), issued by insurers and written on policy forms acceptable to Lender, and deliver evidence of the Required Insurance Coverages in a form acceptable to Lender at least ten days before the expiration of the Required Insurance Coverages;

   5.   obey all laws, ordinances, and restrictive covenants applicable to the Property;

   6.   keep any buildings occupied as required by the Required Insurance Coverages;

   7.   if the lien of this deed of trust is not a first lien, pay or cause to be paid all prior lien notes and abide by or cause to be abided by all prior lien instruments; and

   8.   notify Lender of any change of address.

**B.   Lender's Rights**

   1.   Lender or Lender's mortgage servicer may appoint in writing a substitute trustee, succeeding to all rights and responsibilities of Trustee.

   2.   If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

   3.   Lender may apply any proceeds received under the property insurance policies covering the Property either to reduce the Obligation or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the insurance proceeds available to Grantor for repairs.

4.  Notwithstanding the terms of the Note to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor with respect to the Obligation or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender with respect to the Obligation, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

5.  If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

6.  If there is a default on the Obligation or if Grantor fails to perform any of Grantor's obligations and the default continues after any required notice of the default and the time allowed to cure, Lender may—

    a. declare the unpaid principal balance and earned interest on the Obligation immediately due;

    b. direct Trustee to foreclose this lien, in which case Lender or Lender's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

    c. purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

7.  Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

## C.  Trustee's Rights and Duties

If directed by Lender to foreclose this lien, Trustee will—

1.  either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

2.  sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to the Prior Lien and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

3.  from the proceeds of the sale, pay, in this order—

    a. expenses of foreclosure, including a reasonable commission to Trustee;

    b. to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

    c. any amounts required by law to be paid before payment to Grantor; and

    d. to Grantor, any balance; and

4.  be indemnified, held harmless, and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

## D.  General Provisions

1.  If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.  Recitals in any trustee's deed conveying the Property will be presumed to be true.

3.  Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.  This lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

5.  If any portion of the Obligation cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

6.  Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Obligation. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

7.  Grantor assigns to Lender absolutely, not only as collateral, all present and future rent and other income and receipts from the Property. Grantor warrants the validity and enforceability of the assignment. Grantor may as Lender's licensee collect rent and other income and receipts as long as Grantor is not in default with respect to the Obligation or this deed of trust. Grantor will apply all rent and other income and receipts to payment of the Obligation and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due with respect to the Obligation and deed of trust, Grantor may retain the excess. If Grantor defaults in payment of the Obligation or performance of this deed of trust, Lender may terminate Grantor's license to collect rent and other income and then as Grantor's agent may rent the Property and collect all rent and other income and receipts. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Lender's rights and remedies and then to Grantor's obligations with respect to the Obligation and this deed of trust in the order determined by Lender. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies. If Grantor becomes a voluntary or involuntary debtor in bankruptcy, Lender's filing a proof of claim in bankruptcy will be deemed equivalent to the appointment of a receiver under Texas law.

8.  Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be

canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

    9.    In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

    10.    Grantor may not sell, transfer, or otherwise dispose of any Property, whether voluntarily or by operation of law, without the prior written consent of Lender. If granted, consent may be conditioned upon—

    a.  the grantee's integrity, reputation, character, creditworthiness, and management ability being satisfactory to Lender; and

    b.  the grantee's executing, before such sale, transfer, or other disposition, a written assumption agreement containing any terms Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

Grantor may not cause or permit any Property to be encumbered by any liens, security interests, or encumbrances other than the liens securing the Obligation and the liens securing ad valorem taxes not yet due and payable without the prior written consent of Lender. If granted, consent may be conditioned upon Grantor's executing, before granting such lien, a written modification agreement containing any terms Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, an approval fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

Grantor may not grant any lien, security interest, or other encumbrance (a "Subordinate Instrument") covering the Property that is subordinate to the liens created by this deed of trust without the prior written consent of Lender. If granted, consent may be conditioned upon the Subordinate Instrument's containing express covenants to the effect that—

    a.  the Subordinate Instrument is unconditionally subordinate to this deed of trust;

    b.  if any action is instituted to foreclose or otherwise enforce the Subordinate Instrument, no action may be taken that would terminate any occupancy or tenancy without the prior written consent of Lender, and that consent, if granted, may be conditioned in any manner Lender determines;

    c.  rents, if collected by or for the holder of the Subordinate Instrument, will be applied first to the payment of the Obligation then due and to expenses incurred in the ownership, operation, and maintenance of the Property in any order Lender may determine, before being applied to any indebtedness secured by the Subordinate Instrument;

    d.  written notice of default under the Subordinate Instrument and written notice of the commencement of any action to foreclose or otherwise enforce the Subordinate Instrument must be given to Lender concurrently with or immediately after the occurrence of any such default or commencement; and

    e.  in the event of the bankruptcy of Grantor, all amounts due on or with respect to the Obligation and this deed of trust will be payable in full before any payments on the indebtedness secured by the Subordinate Instrument.

Grantor may not cause or permit any of the following events to occur without the prior written consent of Lender: if Grantor is—

    a.  a corporation, the dissolution of the corporation or the sale, pledge, encumbrance, or assignment of any shares of its stock;

    b.  a limited liability company, the dissolution of the company or the sale, pledge, encumbrance, or assignment of any of its membership interests;

    c.  a general partnership or joint venture, the dissolution of the partnership or venture or the sale, pledge, encumbrance, or assignment of any of its partnership or joint venture interests, or the withdrawal from or admission into it of any general partner or joint venturer; or

    d.  a limited partnership, (1) the dissolution of the partnership, (2) the sale, pledge, encumbrance, or assignment of any of its general partnership interests, or the withdrawal from or admission into it of any general partner, (3) the sale, pledge, encumbrance, or assignment of a controlling portion of its limited partnership interests, or (4) the withdrawal from or admission into it of any controlling limited partner or partners.

If granted, consent may be conditioned upon—

    a.  the integrity, reputation, character, creditworthiness, and management ability of the person succeeding to the ownership interest in Grantor (or security interest in such ownership) being satisfactory to Lender; and

    b.  the execution, before such event, by the person succeeding to the interest of Grantor in the Property or ownership interest in Grantor (or security interest in such ownership) of a written modification or assumption agreement containing such terms as Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

    11.    When the context requires, singular nouns and pronouns include the plural.

    12.    The term *Note* includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.

    13.    This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

    14.    If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

    15.    Grantor and each surety, endorser, and guarantor of the Obligation waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

    16.    Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if this deed of trust is placed in the hands of an attorney for enforcement.

    17.    If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

18.   The term "Lender" includes any mortgage servicer for Lender.

19.   Grantor represents that this deed of trust and the Note are given for the following purposes:

**(Acknowledgment)**

STATE OF TEXAS
COUNTY OF

This instrument was acknowledged before me on                                        ,
by                                                        .

_____
Notary Public, State of Texas
Notary's name (printed):

Notary's commission expires:

**(Corporate Acknowledgment)**

STATE OF TEXAS
COUNTY OF

This instrument was acknowledged before me on                                        ,
by                                        ,
of
a                                        corporation, on behalf of said corporation.

_____
Notary Public, State of Texas
Notary's name (printed):

Notary's commission expires:

AFTER RECORDING RETURN TO:                                PREPARED IN THE LAW OFFICE OF: