IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 22-60004 |
| DAVID MICHAEL MOBLEY | § | Chapter 11 |
| *Debtor* | § | |

**LITIGATION TRUSTEE'S EMERGENCY MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT UNDER FED. R. BANKR. P. 9019**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOUJLD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING, UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED.  IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TO THE HONORABLE U.S. BANKRUPTCY JUDGE:

Plaintiff, Jourdain Poupore, Litigation Trustee for the Mobley Litigation Trust (the "Trustee"), hereby files this motion (the "Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of an order, substantially in the form attached (the "Proposed Order"), approving the Compromise and Settlement by and between the Trustee and REB TX EC Ventures ("REB TX") and Richard Borstmayer ("Borstmayer") (REB

1

TX and Borstmayer are collectively referred to herein as "Defendants"). In support of this Motion, the Trustee would respectfully show the following:

## Relief Requested

1.      The Trustee seeks approval of the compromise and settlement of the claims asserted in Adversary Proceeding No. 24-06002 (the "Adversary") reached by the Trustee and Defendants, pursuant to the terms and conditions of the Mediated Settlement Agreement (the "MSA"), a copy of which is attached hereto as **Exhibit A**.

## Jurisdiction and Authority

2.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O). This Court has constitutional authority to enter a final order in this matter. The Trustee and Defendants consent to the entry of a final order or judgment by this Court in this case and the Adversary.

## Procedural Background

3.      On January 21, 2022, David Michael Mobley ("Debtor") filed a voluntary Chapter 11 petition for reorganization under Subchapter V of the Bankruptcy Code.

4.      On June 1, 2022, the bankruptcy court sustained objections to Debtor's Subchapter V designation and ordered the Chapter 11 reorganization to proceed as a non-Subchapter V case. (Doc. 104).

5.      On January 6, 2023, the bankruptcy court approved the mediated settlement and term sheet between Debtor and creditor Quality Lease and Rental Holdings, LLC and its affiliates. (Doc. 164).

6.      Per the terms of such settlement, on January 27, 2023, the bankruptcy court ordered the appointment of an examiner for purposes of investigating potential claims, causes of action, and/or fraudulent transfers belonging to the Chapter 11 estate. (Doc. 175).

7.     On May 30, 2023, examiner Drew McManigle filed his report, identifying multiple claims and fraudulent conveyances. (Doc. 193).

8.     On December 7, 2023, Debtor filed his Amended Plan of Reorganization (the "Plan") which incorporates provisions of the court-approved settlement. (Doc. 227).  The Plan was confirmed on March 20, 2024. (Doc. 265).  In particular, the settlement and Plan provide for the appointment of a litigation trustee to prosecute preserved claims held by the estate for the benefit of unsecured creditors.  Under the Plan, Class 11 Unsecured Creditors are the beneficiaries of the net amounts realized from the settlement.

9.     On January 8, 2024, the bankruptcy court appointed Jourdain Poupore as the litigation trustee and authorized him to file and prosecute claims on behalf of the estate. (Doc. 239).

10.     The Trustee brought the Adversary against Defendants to avoid and recover the fraudulent and/or preferential transfers identified and discussed at paragraphs 17 through 28 of the Examiner's Report of Drew McManigle. (Doc. 193).

## Factual Background

11.     In 2012, Debtor acquired 19.457 acres of improved real estate located at 1401 Martin Luther King Blvd., El Campo, Texas 77437 (the "Property").

12.     On August 24, 2020, Borstmayer formed REB TX.  On September 14, 2020, REB TX acquired the debt and lien secured by the Property from the original lender and recorded an instrument titled "Transfer and Assignment of Lien" in the real property records of Wharton County, Texas.

13.     Debtor filed his chapter 11 case in the afternoon of January 21, 2022.  In the morning of January 21, 2022, Debtor executed and recorded in the real property records a warranty deed in lieu of foreclosure in favor of REB TX.  This deed conveyed title to the Property to REB

3

TX and expressly provided that the Note and related deed of trust held by REB TX were not released.

14.     In Debtor's initial bankruptcy schedules filed on February 4, 2022, Debtor stated that he transferred the Property to REB TX in exchange for debt forgiveness in the amount of $850,000.  In amended filings, Debtor increased the stated amount of debt forgiveness to $1,250,000.  Since acquiring the Property, REB TX has paid the real property taxes on the Property, kept the Property insured, and generally maintained the Property.

15.     The Trustee has asserted that the Property had a market value of $2,876,000 as of January 21, 2022, based on an appraisal obtained by Debtor, a copy of which is attached to the Examiner's Report of Drew McManigle.  Although the Trustee has not obtained a formal appraisal of the Property, based on conversations with a different appraiser and a highly respected real estate broker familiar with the applicable market, the Trustee believes that the Property should be listed for sale at or above $2 million.  Defendants do not agree with the Trustee's assertions regarding the value of the Property.

16.     The Trustee asserted claims against Defendants for fraudulent transfer under the Texas Uniform Fraudulent Transfer Act and Section 548 of the Bankruptcy Code.  The Trustee also asserted a preference claim under Section 547 of the Bankruptcy Code and a conspiracy claim against all Defendants.

17.     Defendants denied the claims, and the parties agreed to mediate the dispute before the Honorable Bankruptcy Judge Marvin Isgur on September 25, 2024.  They were successful in reaching a resolution on the terms and conditions set forth in the MSA.

18.     The Trustee has sought emergency consideration of the relief sought in this Motion because the MSA provides for the sale of the Property and the parties believe that a sale should not be delayed.

## The Proposed Settlement

19.     The MSA setting forth the terms of the settlement is attached to this Motion as **Exhibit A**.  A summary of the terms of the MSA is as follows (to the extent that the terms in this summary contradict any terms in the MSA, the terms of the MSA shall control):

(1)     Defendants will pay the Trustee $250,000 no later than 14 days following entry of the order approving the settlement.

(2)     The Property will be sold (in one or more sales) in accordance with agreed upon procedures, and in general the Trustee will control the sale process and have final determination of the terms of the sale of the Property.

(3)     While the Property is being marketed for sale, REB TX will continue to collect rent from tenants but will also continue to be responsible for the payment of ad valorem taxes, liability insurance, and continued maintenance related to the Property.

(4)     The first $1,200,000.00 in aggregate net sales proceeds from any and all sale(s) of the Property will be distributed 50% to the Trustee and 50% to Defendants.  The Trustee will receive all net sales proceeds in excess of $1,200,000.

(5)     If the rental income from the Property is not sufficient to cover REB TX Advances (as defined in the MSA) made on or after September 26, 2025, assuming the Property is not completely sold by then, REB TX will be entitled to be reimbursed the amount of the REB TX Advances made on or after September 26, 2025 from the first net sales proceeds prior to any distribution to the Parties described in paragraph 19(4) herein.

(6)     Upon approval of the settlement by the bankruptcy court, the parties will be deemed to have given each other full and mutual releases.

## Requirements for Approval of Settlement

**Bankruptcy Rule 9019**

20.     Bankruptcy Rule 9019 governs the approval of a compromise or settlement.  It provides, in part, that "on motion by the trustee and after a hearing, the bankruptcy court may approve a compromise or settlement."  The Supreme Court and case law in the Fifth Circuit

"suggests two general standards against which a proposed settlement is to be assessed: (1) whether the settlement is 'fair and equitable,' and (2) whether the settlement is 'in the best interests of the estate.'" *In re Mirant Corp.*, 348 B.R. 725, 738 (Bankr. N.D. Tex. 2006), *aff'd sub nom.* (*See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir.1980)).

21.     Under Bankruptcy Rule 9019, the decision to approve the compromise of a controversy is within the sound discretion of the Bankruptcy Court. *See In re Aweco, Inc.*, 725 F.2d 293, 297 (5th Cir. 1984), cert denied, 496 U.S. 880 (1984); *In re Cajun Electric Power Coop.*, 119 F.3d 349, 355 (5th Cir. 1997).  The Court should "make a well-informed decision, 'comparing the terms of the compromise with the likely rewards of litigation.'" *In re Cajun Electric Power Coop.*, 119 F.3d at 356 (citing *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980)).  The Fifth Circuit views compromises as a "normal part of the process of reorganization … oftentimes desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted).

22.     The Fifth Circuit, as guidance to bankruptcy courts, has articulated a three-part test to be applied to determine if a settlement is beneficial: (1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise. *In re Age Refining, Inc.*, 801 F.3d 530, 540 (5th Cir. 2015) (citing *In re Jackson Brewing*, 624 F.2d at 602).

23.     Consideration of the wisdom of the proposed compromise should include "the paramount interest of creditors with proper deference to their reasonable views" and whether the compromise arose from an arms-length negotiation. *In re Foster Mortgage Corp.*, 68 F.3d 914-18

6

(5th Cir. 1996).  In determining the best interests of creditors, the "test is not the desires of the majority as such, but the best interests of creditors taking into account their reasonable views." *In re Cajun Elec. Power Coop.*, 119 F.3d at 358 (upholding a settlement agreement despite the numerical majority of creditors opposing the settlement).  The Trustee has the burden of showing that the balance of these factors demonstrates a fair and equitable compromise, but must only show that the settlement falls within the "range of reasonable litigation alternatives." *In re Allied Properties, LLC*, 2007 WL 1849017, at *4 (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)).  A bankruptcy court can give more weight to one or more of the factors in exercising its discretion. *In re Derosa-Grund*, 567 B.R. 773, 785 (Bankr. S.D. Tex. 2017) (citing *In re Bard*, 49 Fed.Appx. 528, 532-33 (6th Cir. 2002); *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 160-65 (Bankr. S.D.N.Y. 2005) (giving certain factors "some weight," "no weight," or "moderate weight")).

**Probabilities of Success**

24.     The Trustee believes that in all likelihood he would succeed on the fraudulent transfer claim.  However, the Trustee has legitimate concerns about REB TX's entitlement to credits for the amount of the debt forgiven and certain costs incurred by REB TX while it has owned the Property.  REB TX has no assets other than the Property to satisfy a potential money judgment.  The Trustee believes that the structure of the settlement strikes a fair balance in light of these factors.

**Complexity; Expense and Duration**

25.     The merits of the claims are not overly complex, however, the value of the Property at the time of the transfer will require expert appraisal testimony and significant expense. Moreover, it is likely that the Trustee would be required to engage an accountant to review REB

TX's expenses that might be properly considered as legitimate credits.  The Trustee believes significant discovery would be required and in likelihood the case would not be trial ready for at least six (6) months.

**Other Factors**

26.     The MSA was the product of an arms-length negotiation with the help of a seasoned and well-regarded senior bankruptcy Judge, the Honorable Marvin Isgur.  The paramount interest of the creditors is the realization of a cash recovery as quickly as possible.  This compromise does that.  The settlement also requires a substantial immediate payment of $250,000.  Moreover, litigation counsel has agreed to reduce the contingency fee from 36% to 33% of the recovery and receive payment of the fee only as cash is received.

27.     The Trustee believes, in his business judgment, that the compromise is fair and equitable and in the best interest of the creditors who are the beneficiaries of the settlement.

28.     In order to implement the compromise, the Trustee respectfully requests that the Court enter an order providing that notice of the relief requested satisfies Bankruptcy Rule 6004(a) and excluding such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

Conclusion

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests that this Court enter an order, substantially in the form attached hereto, approving the settlement in accordance with the terms of the MSA and grant such other and further relief as is just and proper.

Respectfully submitted,

*/s/ Jourdain Poupore*
Jourdain Poupore
Texas Bar No. 24094901
Federal Bar No. 2717697
**POUPORE LAW FIRM PLLC**
3233 W. Dallas St., Suite 313
Houston, Texas 77019
Tel: 713-922-1655
service@poupore.law

*/s/ Walter J. Cicack*
Walter J. Cicack
Texas Bar No. 04250535
**HAWASH CICACK & GASTON LLP**
711 W. Alabama St., Suite 200
Houston, Texas 77006
Tel: 713-658-9015
wcicack@hcgllp.com

***Attorneys for Litigation Trustee***

## Certificate of Service

I hereby certify that a true and correct copy of the above and foregoing has been served by electronic means via ECF transmission to all PACER system participants in this bankruptcy case on October 4, 2024.

*/s/ Walter J. Cicack*
Walter J. Cicack